VAN KEUREN and others *vs.* McLAUGHLIN and others.

1. A deed absolute on its face, given to secure the payment of money, is only a mortgage. And a subsequent parol agreement that the deed should become absolute upon the payment of a certain sum, will not release the equity of redemption from the lien of a judgment entered between the agreement and the payment of the money.

2. An instrument, that by its own provisions or an agreement made at its execution, conveys property as security for a debt, cannot be converted into an absolute deed, except by such means as would have been adequate to convey the absolute estate in the first instance.

3. An equity of redemption is a legal estate, and can be conveyed or released only by writing.

4. Where the grantee of lands alleged to have been conveyed to him in fraud of creditors, has a *bona fide* claim for a large amount, which the conveyance was honestly made to secure, and the whole fraud is in a subsequent transaction, he will be allowed to retain his priority to the amount of his debt, and the property will be sold to pay him, in the first place, the amount of his claim, and next, the amount due judgment creditors.

Argued on final hearing, upon bill, answer, replication, and proofs.

*Mr. Weart,* for complainants.

*Mr. Williamson,* for defendants.

THE CHANCELLOR.

The complainants bring this suit to have conveyances made by the defendant James McLaughlin, to his father, the defendant Michael McLaughlin, declared void as against a judgment held by them against James McLaughlin.

The judgment of the complainants was entered on the 23d day of August, 1866, in the Circuit Court of the county of Hudson, the county in which the lands in question lie, for $3288. An execution against lands and goods was issued upon it, to which a return was made that no goods or lands of the defendant could be found.

The defendant, James McLaughlin, had, by three deeds, conveyed all his real estate to his father. Two of these deeds were dated and acknowledged on the 19th of May, 1866, the third was dated on the 9th of July, and all three were recorded on the 12th day of July, 1866. The consideration stated in the first deed, was $11,100, and the lands were subject to three mortgages, amounting to $4250. The consideration in the second deed was $3200, and the lands were subject to no mortgage. The consideration of the third deed was $1800, and the lands were subject to a mortgage of $1572. The complainants allege that these deeds were given by way of mortgage to secure to Michael McLaughlin a debt of about $7000, which James owed his father, and to indemnify his father from a note of $5000, which D. S. Gregory had endorsed for James, as surety, and for which Michael McLaughlin has become responsible, and that they were made in the form of absolute deeds, to defraud the complainants and his other creditors; and they ask to have them set aside, as against their debt, in such manner that they may be paid by the sale of these lands, after first paying out of the proceeds the amount really due to Michael McLaughlin, and the amount for which he was liable on his assumption of the note endorsed by Gregory.

The defendants, by their answer, admit that the lands in the first two deeds were conveyed only to secure to the

father $7608 due to him from his son, and deny that they were conveyed for any other purpose, or to indemnify Dudley S. Gregory, or any one else, for endorsements or otherwise. But they answer that on the 9th of July, a new agreement was made, by which the son agreed to convey to the father another lot of land, and to assign to him a bond and mortgage for $2400, and to give up the right to redeem the lands before conveyed as security; and in consideration of this, the father agreed to pay the son $5000, and to negotiate for him a sale of the bond and mortgage. That thereupon the son conveyed to the father the lot described in the third deed, and assigned to him the bond and mortgage, and the deeds were recorded as absolute deeds, on the 12th of July; and the father, on his part, on the 8th of October, paid to the son the $5000, and $1800 for which he had sold the bond and mortgage.

James McLaughlin, on the 22d day of August, 1866, the day before that on which the judgment was entered, made a general assignment for the equal benefit of his creditors. The $5000, and $1800, due from the father to the son, were not claimed by, or paid to, the general assignee, but were paid, as above stated, nearly two months after the assignment, by the father to the son, who used no part to pay his legal debts, but squandered them away.

It is satisfactorily shown that the son owed the father $7608. It was just to secure to him that amount; and the conveyances, so far as they are security for that sum, are not seriously disputed. In fact, the complainants supposed, and stated in their bill, that these conveyances were also security for $5000 beyond that amount, for which they supposed the father had become liable to Mr. Gregory, but this was denied by the answer, and disproved by the evidence of James McLaughlin.

The complainants contend, that the property was conveyed to the father at prices far below its real value; that this was done to defraud them and other creditors of the son, and

whether done for that purpose or not, it did, in fact, defraud them and defeat the recovery of their debt.

The defendants contend, that the property was not worth more than $18,000 or $19,000, and that the debt to the father, with $5822 of encumbrances, and the $5000 paid in cash, being $18,450, was the fair value. The complainants, on the other hand, claim that the property was worth $30,000, and that the parol agreement of the 9th, offering to make these deeds absolute, and to record them as such, was made to defraud creditors, so as to enable the father to hold the lands free from the operation of the judgment and assignment, and to hold the price for the use of the son, and pay it over to him.

There is much conflict between the witnesses as to the value of the land; those of the complainants place it at about $30,000, those of the defendants at $18,000 or $19,000. I have no doubt but that some of the complainants' witnesses place the value too high, and as little doubt but that those of the defendants place it too low. It would be mere arbitrary determination on my part to fix it at $25,000, or any definite sum, as a mean between the witnesses, but I am satisfied that the lands, subject to the encumbrances, were worth more than the $18,450, by a considerable amount—at least equal to the claim of these complainants.

The circumstances of the case are such that it is impossible to avoid the conviction that the father knew of the situaation of the son, under which this transfer was made, and the money paid him. The son was an only child, unmarried, and lived with his father and mother, by both of whom the amount of his debt to his father was advanced, in small sums, at different times, for which no notes were given, and of which no account appears to have been kept. The parents appear to have advanced whatever the son asked. James testifies that his father knew of his embarrassments, but does not know whether he knew of the judgment of the complainants, or the pendency of their suit, or whether the summons was served on him, and, in general, manifests or pretends

an ignorance about his own concerns that is surprising, and must shake all confidence in the accuracy of his memory, or the truthfulness of his evidence. The father has not been sworn. He might, perhaps, have recollected the facts, and testified to them in a manner which would have commanded belief. As the case stands, it is impossible not to believe that the father, on the 9th of July, knew of the claim on which the complainants' judgment was obtained, and, perhaps, of the pendency of the suit; that he knew of the making of the assignment, and of the entry of the judgment, at or soon after their respective dates; that, with this knowledge, he took the conveyance of the property, and retained the price in his hands for the use of his son, knowing that this would defeat the claims of creditors and enable his son to delay them and put them at defiance, and although his object may not have been directly to defraud the creditors, he permitted himself to be made a tool for that purpose, under circumstances which should have opened his eyes to his true position. I feel compelled to conclude, that while the transaction of May was for the honest purpose of securing his father a fair debt, that of the 9th of July was done by James McLaughlin to delay and defraud his creditors, under circumstances that must affect his father with knowledge of his object, and its effect upon his creditors.

But if the circumstances of this case did not show sufficient to substantiate, as to Michael McLaughlin, fraud in the purchase, as against creditors, yet the two deeds of May 19th cannot have had any effect beyond that for which they were made and delivered, as admitted in the answer, that is as security for the debt due from James to his father, of $7608. The bill charges, and the answer in response expressly says, that "the said conveyances were made to secure the said Michael what the said James owed him," and denies "that the said conveyances were made upon any other consideration, or for any other purpose, intent, or object." And it states that, on the 9th of July, an agreement was made that the deeds should become absolute, and that

Michael should pay James $5000, which was not paid until the 8th of October ensuing.

From this it is clear, that these deeds were delivered by way of security only, and were nothing but mortgages. It is well settled, that a deed absolute on its face, given to secure the payment of money, is only a mortgage. The act to register mortgages expressly declares, that where it appears by writing that a deed absolute on its face was intended by way of mortgage, it shall be considered as a mortgage, and registered as such. And in this case, these two deeds must be regarded as mortgages, and subject to the rules applying to mortgages, which are so by the terms of the instruments themselves. James McLaughlin had, until the 9th of July, the right to redeem his lands by paying off these mortgages; he could give subsequent mortgages, so as to bind the property, and judgments against him would be a lien upon his estate in the lands. That estate was an equity of redemption. The question then comes up, whether the parol agreement made on that day, that these deeds should be absolute, and that he should be paid $5000 as the consideration of that agreement, would be sufficient to release the equity of redemption, and relieve the land from the lien of the judgment of the complainants entered between the agreement and the payment of the money.

The rule in equity is, "once a mortgage, always a mortgage;" and an instrument that, by its own provisions or an agreement made at its execution, conveys property as security for a debt, cannot be converted into an absolute deed, except by such means as would have been adequate to convey the absolute estate in the first instance. And, besides this wise and well settled doctrine of the equity courts, the statute of frauds would prevent a clear and valid legal estate, such as the equity of redemption, from being conveyed or released, except by writing. And if there is any case that calls more than another upon the courts to insist upon the salutary provisions of this useful statute being enforced, it is the case of the release of an equity of redemption.

In the case before the court, there was an equity of redemption worth at least $5000, and I have no doubt double that sum. After a judgment was obtained that would be a lien upon it, a payment was made to the judgment debtor, said to be by virtue of a parol agreement made before the judgment, by which the land was released from the judgment. In this case, the agreement is proved only by the oath of the debtor; for, as to this, the answer is not responsive; and this witness, judging from his conduct as disclosed in the cause, and the residue of his own testimony, is one upon whom little reliance can be placed. I fear a doctrine that permitted this, would open a door for more frauds and perjuries than have been shut out by the other provisions of that statute.

In a case like this, where the grantee of the land has a *bona fide* claim for a large amount which the conveyance was honestly made to secure, and the whole fraud is in the subsequent transaction, the grantee will be allowed to retain his priority, to the amount of his debt, and the property will be sold by order of the court, to pay him, in the first place, the amount of his claim, and next, the complainants the amount due on their judgment, with interest and costs. This proceeding is based upon the principle and practice established by this court in the cases of *Beeckman* v. *Montgomery*, 1 *McCarter* 106 ; *Smith* v. *Vreeland*, 1 *C. E. Green* 198 ; *Belford* v. *Crane*, *Ibid.* 265. And also in the courts of New York. *Boyd* v. *Dunlap*, 1 *J. C. R.* 478.