Irwin v. Johnson.

For reversal—Magie, Kirk, Paterson—3.

---

Levi G. Irwin and Aaron E. Johnson, executors of Richard Corlies, deceased, et al., appellants,

v.

Elizabeth E. Johnson, respondent.

1. Voluntary declarations by a creditor of an intention to release a debtor, unless accompanied by some act which amounts to a release at law, will not operate as an equitable release.

2. *Leddel* v. *Starr, 5 C. E. Gr. 274,* overruled.

---

On appeal from a decree advised by Vice-Chancellor Bird.

Richard Corlies died January 2d, 1879, leaving a will, of which Levi G. Irwin and Aaron E. Johnson were the executors.

At the time of the death of Mr. Corlies there were, in the possession of one Annie Jones (a grandchild who lived with him), two mortgages made to the deceased by the complainant, Elizabeth E. Johnson, who is his daughter.

These mortgages were placed in the hands of the executors as a part of the assets of the estate, in the shape of subsisting debts against Mrs. Johnson.

Subsequently Mrs. Johnson and her husband gave a promissory note to the executors, secured by a chattel mortgage, in pay-

ment of one of the said mortgages, which mortgage was then canceled of record.

She files her bill in this suit, the prayer of which bill is that the subsisting mortgage may also be canceled ; that the cancellation of the other mortgage, for which the note was given, may be confirmed, but that the note and chattel mortgage given for it may be canceled, and the executors enjoined from suing upon any of these instruments.

The facts which the complainant alleges to exist, and upon which she grounds her claim for relief, are, substantially, the following : that the testator informed the complainant that upon his decease the said mortgages should be hers ; that he offered to deliver the mortgages to her, but that she being unable to pay the increased tax which would follow, refused to accept them ; that the mortgages were delivered to Annie Jones for the purpose of delivering them, after his decease, to complainant.

*Mr. John J. Ely*, for appellant.

*Mr. Chillion Robbins*, for respondent.

The opinion of the court was delivered by

REED, J.

The complainant's counsel placed his claim for relief upon two grounds.

NOTE.—What endorsements on an obligation made by the obligee are sufficient to bar his representatives from enforcing it or not, in equity, *Aston* v. *Pye*, 5 *Ves. 351, note ; Major* v. *Major, 1 Drew. 165 ; Antrobus* v. *Smith, 12 Ves 39 ; Trimmer* v. *Darby, 25 L. J. (Ch.) 424 ; Tiffany* v. *Clarke, 6 Grant's Ch. 474 ; Sherwood* v. *Smith, 23 Conn. 520 ; Otis* v. *Beckwith, 49 Ill. 121 ; Pennington* v. *Gittings, 2 Gill & Johns. 208 ; Bulkeley* v. *Noble, 2 Pick. 337 ; Meriwether* v. *Morrison, 78 Ky. 572 ; Brinckerhoff* v. *Lawrence, 2 Sandf. Ch. 400 ; Green* v. *Langdon, 28 Mich. 221 ; Ricketts* v. *Livingston, 2 Johns. Cas. 97 ; see Batton* v. *Allen, 1 Hal. Ch. 99.*

What accounts, letters and memoranda of a decedent are sufficient to discharge an obligation or not, or to procure equitable relief therefrom, *Eden* v. *Smyth, 5 Ves. 341 ; Morgan* v. *Malleson, L. R. (10 Eq.) 475 ; Scales* v. *Maude, 6 De G. M. & G. 43 ; Moore* v. *Darton, 7 Eng. L. & Eq. 134 ; Clark* v. *Warner, 6 Conn. 354 ; Hartwell* v. *Rice, 1 Gray 587 ; Ellis* v. *Secor, 31 Mich. 185 ;*

Irwin v. Johnson.

*First.* A gift of these mortgages to Mrs. Johnson.

*Second.* An equitable release of them to her by the deceased during his lifetime.

The contention upon the first ground is that the delivery to Annie Jones of these mortgages, was a delivery to Mrs. Johnson with an intent to pass the property in the mortgages to the complainant. There is nothing in the case to support this contention. How these papers came into the hands of Annie Jones is only explained by her own testimony, and it is entirely inconsistent with the view that it was a transference of the dominion over the property from the testator to Mrs. Johnson.

She says that they were given her, with instructions by the testator to give them, upon his decease, to the persons who were to settle his business.

Outside of her testimony I find nothing which would (under the rules which guard the passage of property by gift) bring the present case into a semblance of a gift.

Nor did the vice-chancellor place the case upon that ground.

He put his conclusion entirely upon the doctrine of an equitable release. The rule adopted and which he was bound to recognize as the law, is laid down in the case of *Leddel's Exrs.* v. *Starr,* 5 *C. E. Gr. 274.* Chancellor Zabriskie, in this case, announced the rule in these words: "There is a series of decisions in courts

*High's Appeal, 21 Pa. St. 283 ; Loring v. Blake, 106 Mass. 592 ; Carpenter v. Soule, 88 N. Y. 251; Oller v. Bonebrake, 65 Pa. St. 338; Mallett v. Page, 8 Ind. 364; Jennings v. Blocker, 25 Ala. 415; Statlings v. Finch, Id. 518; Crawford v. McElvy, 2 Speer 225.*

An intentional destruction of the obligation amounts to a release of the debt, *Gilbert v. Wetherell, 2 Sim. & Stu. 254; Silvers ads. Reynolds, 2 Harr. 275; Darland v. Taylor, 52 Iowa 503; Gardner v. Gardner, 22 Wend. 526; Rees v. Rees, 11 Rich. Eq. 86.* A mere expression of an intention to destroy it is not enough, *Nelson v. Cartmel, 6 Dana 7; Campbell's Estate, 7 Pa. St. 100; Chew v. Chew, 8 C. E. Gr. 471; see Harley v. Harley, 57 Md. 340.*

A verbal gift of the arrears of an annuity cannot be recalled after the death of the obligor, *Long v. Long, 17 Grant's Ch. 251; see Johnson v. Johnson, 22 La. Ann. 144.* And so of a surrender of an obligation, with an intention to cancel or forgive the debt, *Hurst v. Beach, 5 Madd. 351; Vanderbeck v. Vanderbeck, 3 Stew. Eq. 265; Sherman v. Sherman, 3 Ind. 337; Edwards v. Campbell, 23 Barb. 423; Bridgers v. Hutchins, 11 Ired. 68; Lee v. Boak, 11 Gratt. 182; and what acts amount to such surrender, Ricketts v. Livingston, 2 Johns.*

of equity in England and in this country which have established
the principle that when a creditor has, by written or parol decla-
rations with regard to a debt, or by conduct tantamount thereto,
declared or agreed that a debt shall be relinquished or given up,
or that it has been so relinquished or given up, a court of equity
will consider this an equitable release, and will not permit his
representatives to enforce it."

The rule so laid down was broad enough to cover a case where
a person had announced his intention to discharge a debt.

If we assume that the facts in this case show that Mr. Corlies,
in his lifetime, announced to Mrs. Johnson that upon his death
these mortgages should be hers, and to others, that he intended
to make her equal with his grandchildren by giving her the mort-
gages, I yet think the rule which controlled the court below is
one which, before adoption by this court, should be the subject
of careful scrutiny.

At law it is apparent that a parol declaration of the kind set
out in this case would have no efficiency at all. A debt cannot
be extinguished by a mere statement by the creditor that he does
not intend to enforce it; or that he forgives it; or even by a
receipt for the whole, when, in fact, a part only has been paid.

The recognition of a doctrine which permits a mortgage to be
extinguished by a verbal declaration of the debtee that he did
not intend to insist upon its payment, would seem to break down

*Cas. 97; Dittoe* v. *Cluney, 22 Ohio St. 436; Melvin* v. *Bullard, 82 N. C. 33;
Young* v. *Young, 80 N. Y. 422; Henderson* v. *Henderson, 21 Mo. 379; Shaw*
v. *White, 28 Ala. 637.*

The following declarations by deceased obligee, without any acts, were held
insufficient to discharge the debt, or to prevent its enforcement in equity:
that the obligor might do as he pleased with what he owed; that decedent
should never ask him for it, or require him to pay it, *Reeves* v. *Brymer, 6 Ves.
516;* that the payee of a note told the maker (his son) that he never intended
to collect it while he lived, and that after his death it should be the son's,
*Denman* v. *McMahin, 37 Ind. 241;* that a donor *had* made a gift to his niece
etc., *Wheatley* v. *Abbott, 32 Miss. 343; Kreider* v. *Boyer, 10 Watts 54; Batton*
v. *Allen, 1 Hal. Ch. 99;* see *Doty* v. *Willson, 47 N. Y. 580; Clark* v. *Clark, 17
B. Mon. 698;* that the obligee [a father-in-law] took a bond from his son-in-
law, for money advanced, because he could not write or keep a book, but that
the obligee need not pay it back, *Haverstock* v. *Sarbach, 1 Watts & Serg. 390;*

Irwin v. Johnson.

not only the rule already mentioned, but that which forbids the revocation of an instrument by an act less solemn than the act creating it. Here there is neither a payment nor an agreement for a good consideration to discharge, nor a technical release under seal. There is in the doctrine an encroachment upon the field designed to be covered by the statute of wills, because it permits a person by parol to give a direction to his property after his decease variant from the course it would take by the direction of the instrument executed in conformity with the requirements of the statute. The doctrine has been accepted in a few cases, but seems to have arisen from a desire to alleviate the supposed hardship of special cases, and from a mistaken view of what was ruled in a case decided in the high court of parliament as early as the year 1724. I allude to the case of *Wekett and wife* v. *Raby*, reported in *3 Bro. P. C. 16*. This was that case : The testator made a will by which he made his daughter Mary his executor and residuary legatee. A man named Raby had been his counsel. The testator·held Raby's bond for £255. In his last sickness the testator said to Mary, his residuary legatee :

"I have Raby's bond, which I keep. I don't deliver it up, for I may live to want it more than he, but when I die he shall have it. He shall not be asked for it."

that a stepmother told the payee of her note that she never intended to collect the money on it, and that if it was not paid in her lifetime it was to be his, *McGuire* v. *Adams, 8 Pa. St. 286;* that a father said he would never collect anything from his son, whose note he held, and "live or die, he should never pay him one cent," *Bradley* v. *Long, 2 Strobh. 160;* that a father entered in his account-book the amount advanced to his daughter on her marriage, declaring that he did not do this for the purpose of making a charge, but for his own gratification; and he afterwards expunged the entry, *Johnson* v. *Belden, 20 Conn. 322;* that a father took the note of his daughter's husband for a farm sold to the latter by the father, promising his daughter and her husband that the whole amount should go as a gift to his daughter, *Carpenter* v. *Dodge, 20 Vt. 595;* that a father caused a writing to be drawn disposing of a mortgage debt in favor of his son's (the mortgagor's) family, and executed it, and said that he did not intend to enforce it, but meant that it should be canceled at his death, *Chew* v. *Chew, 8 C. E. Gr. 471.*

Irwin *v.* Johnson.

After the death of the testator Raby demanded the bond of Mary. She refused to deliver it, but said you may be easy, foɪ it is safe in my hands.

He hinted that accidents or matrimony might put it out of her power to deliver it. She said if I marry I will deliver it the night before.

Afterwards Raby having acted, as Mary thought, in an unfriendly manner towards her, she put the bond in suit. A bill was exhibited in the court of chancery and the suit was restrained. There is no opinion in the case.

Before the high court of parliament, the counsel of the complainant put their case upon the doctrine that a trust was imposed on Mary, the executrix and residuary legatee, by the direction of the testator to her, and her acknowledgment thereof, and her express promise to deliver up the bond. There was no insistence that the parol declarations in themselves amounted to a discharge of the security. What the views of the court were is only inferential. Judge Story speaks of this as a case which would be clearly insupportable as a *donatio mortis causa,* and as carrying the doctrine of an implied trust, or equitable extinguishment of a debt to the very verge of the law. *Story's Eq. Jur.* § *706.*

Mr. Pomeroy classifies the case as one supporting the doctrine that where declarations are made under such circumstances, that the testator imposed a constructive trust upon the property given by his will, so that the beneficiary would not be equitably enti-

The following were held sufficient: "Take back your writings [a bond and mortgage], I freely forgive you the debt," *Richards* v. *Sims, Barn. Ch. 90;* that a mother advanced money to her son, taking a mortgage therefor, and promised him that it should never be recorded or the money collected, *Peabody* v. *Peabody, 59 Ind. 556;* that a father requested his son to sign a note for the value of two horses given to him by his father, and represented to him that the note was never to be paid, *Harris* v. *Harris, 69 Ind. 181;* that an intestate said he had given his son something handsome; that he had held a writing against him, not a note, but had made him a present of it, *Wheeler* v. *Wheeler, 47 Vt. 637;* that a nephew had given his uncle a deed of trust on slaves, to secure moneys loaned, but that the uncle said he never claimed or expected any benefit therefrom, and that he had permitted his nephew to sell all the slaves that were worth anything, *Fitzhugh* v. *Fitzhugh, 11 Gratt. 210.*—REP.

tled to the gift without, at the same time, carrying out the trust and discharging the debt.

The statement of Mr. Pomeroy is intended to include the cases in which the beneficiary by some act or word assents to the declared intention of the testator, so that thereafter it would be a fraud upon his part to refuse to carry out the testator's design, as by his assent he has induced the testator to rely upon it rather than change his will or incorporate his intention in a future will.

Of this class is the case of *Williams* v. *Vreeland,* decided in this court and reported in *5 Stew. Eq. 734.* That was the view taken by Lord Hardwicke in the case of *Byrn* v. *Godfrey, 4 Ves. 6.* After mentioning the circumstances upon which *Wekett* v. *Raby* was decided, he says: " From all this, the court had a fair ground to conclude the case stood exactly according to the representation of the plaintiff, and, being so, the testator, talking to a residuary legatee, and that being admitted, so that the court has sufficient evidence, the residuary legatee will not be permitted to benefit herself of that which was not given to her. It is very near an undertaking by her to do something if the will is not changed. Therefore, the silence is assent on the part of the residuary legatee, and an engagement which, in point of conscience, ought not to be broken by her."

It is true that Lord Cottenham, in *Flower* v. *Marten, 2 Myl. & Cr. 459,* took a different view of what was decided in the case of *Wekett* v. *Raby.* He seems not to have considered the case critically, nor to have had in mind the case of *Byrn* v. *Godfrey.* He mentioned the case of *Wekett* v. *Raby,* after he had already decided the case which he then had under consideration upon another ground, namely, that no debt had ever equitably existed.

In the subsequent case of *Cross* v. *Sprigg, 6 Hare 552,* Vice-Chancellor Wigram says the circumstances of that case (*Wekett* v. *Raby*) bring it within the principle examined by the vice-chancellor in *Podmore* v. *Gunning, 7 Sim. 644.*

The case of *Podmore* v. *Gunning,* was this:

A testator gave his real and personal property to his wife absolutely—

"Having perfect confidence she will act up to those views which I have communicated to her, in the ultimate disposal of my property after her decease."

Two natural children of the testator, after the death of the wife, filed a bill against the wife's heir and administrator, alleging that the testator, at the time of making his will, desired his wife to give the whole of his property, after her death, to the plaintiffs, and that she promised and undertook to do so.

The court held that upon proof of these facts a trust arose in favor of the plaintiff. This is the doctrine of *Williams* v. *Vreeland*, in this court, already mentioned.

In the case of *Sprigg* v. *Cross*, the vice-chancellor criticises with great care and acuteness all the preceding cases in the equity courts, and denies that voluntary declarations indicating an intention on the part of a creditor to forgive or release a debt, if there be no evidence of a release at law, constitute a release in equity.

This case was reversed, but upon a point which did not shake the force of this conclusion. The same learned vice-chancellor, four years later, had occasion, in the case of *Peace* v. *Hains, 11 Hare 151*, to reconsider the same question, and there refers with approval to his remarks in the case of *Cross* v. *Sprigg*.

In the case of *Yeomans* v. *Williams, L. R. (1 Eq.) 184*, the authority of the case of *Cross* v. *Sprigg* was recognized by Sir J. Romilly, M. R., and the case under consideration was decided upon the ground that a father-in-law had induced his son-in-law to live in a house by saying that he should pay no rent in the form of interest upon a mortgage held by the father-in-law upon the property, and that he could not collect interest, because he had induced the son-in-law to take a certain course of conduct by his statement.

In *Taylor* v. *Manners, L. R. (1 Ch. App.) 48*, the authority of the cases of *Cross* v. *Sprigg* and *Peace* v. *Hains* is assumed by the counsel, and Lord Justice Turner says at law certainly there was no perfect gift, and a court of equity as certainly will not enforce a mere intention to give.

I find no more recent allusion to this doctrine in the English

reports; but I think it is apparent that while the early decisions may be involved in some confusion, it cannot be said that the doctrine of *Leddel's Exrs.* v. *Starr* was the doctrine of the English court of chancery at the time when the law of that court became the law of this state. The case of *Wekett* v. *Raby* may not be satisfactory in any aspect in which it can be viewed; but that it did not establish the unqualified doctrine that a parol declaration of an intention to release operated as an equitable release, is, I think, clear. The doctrine of the courts of equity in England is now opposed to such a rule, and the utterances of those courts are in opposition to the claim' that it was ever an established rule in those courts.

The case of *Leddel's Exrs.* v. *Starr* was, in my opinion, a departure from the theretofore prescribed limits of equitable interference with existing obligations. It was a departure in the direction of insecurity and uncertainty which this court should not follow. The decree below, founded upon this rule, should be reversed.

*Decree unanimously reversed.*