Tulane v. Clifton.

Paul M. Tulane and George O. Vanderbilt, administrators of the estate of Paul Tulane, deceased,

v.

Frances F. Clifton et al.

1. A promise to pay an annuity, not supported by valuable consideration, is not enforceable at law.

2. To give a consideration sufficient value to support a promise, it must be either such as deprives the person to whom the promise was made of a *right* which he before possessed, or else conferred upon the other party a benefit which he could not otherwise have had.

3. The promise to apply an annuity which the promisor has gratuitously agreed to pay the promisee, to the satisfaction of a debt of the promisee, to become due to the promisor, is not a promise for valuable consideration.

4. A debt on bond and mortgage cannot be extinguished by a mere voluntary statement by the creditor that he will forgive it. Where the purpose is to voluntarily extinguish such a debt, it must be executed by an instrument as solemn as the instrument by which the debt is created.

5. There is no such thing as an equitable release of such a debt by a declaration or agreement of the creditor that he will relinquish or forgive it.

6. Acts which are merely indicative of intention to perform a voluntary promise, which do not prejudice the promisee, are not irrevocable steps in the performance of such a promise.

On bill to foreclose mortgage, answer and proofs.

*Mr. W. D. Holt* and *Mr. George O. Vanderbilt,* for the complainants.

*Mr. John F. Hageman,* for the defendant Frances F. Clifton.

The Chancellor.

The object of this suit is the foreclosure of a mortgage made by Marien Passage to Paul Tulane, in November, 1878, to secure the payment of $3,799.79, with lawful interest, which was then six per cent. By the terms of the mortgage the interest was to be paid annually, on the 1st day of April, and the principal was to be paid on the 1st of April, 1880.

It is admitted that the principal secured by the mortgage, together with interest from April 1st, 1888, is due to the complainants, and that the interest from April 1st, 1887, to April 1st, 1888, has been paid to them. The dispute between the parties is, whether the interest from the date of the mortgage to April 1st, 1887, is paid or satisfied. The proofs establish that in 1867 the mortgagee, actuated by ties of long acquaintanceship with Miss Passage, by gratitude for her attention to his mother in her last illness and by the fact that she was in indigent circumstances, promised to give her an annuity of $300, and thereafter, each year, until after the mortgage here in suit was made, in fact sent her that sum.

In 1878, in order to pay off a mortgage then encumbering her house, upon which she was obliged to pay interest at the rate of seven per centum per annum, she applied to Mr. Tulane to lend her the money necessary to enable her to do so. He complied with her request, taking from her the mortgage now in question. About that time he told her that he would charge her interest upon his loan at the rate of five per cent., and also, at her solicitation, that he would retain that interest from his annuity to her. Thereafter he sent her $100 instead of $300 each year, until his death in March, 1887, and did not make demand for the payment of interest on his mortgage. His agreements to pay the annuity, to accept five per cent. interest upon his loan and to retain that interest from the promised annuity, were merely verbal. There is not a particle of written evidence of them.

The circumstances that, after they were made, he paid only $100 for the annuity and failed to demand payment of the interest reserved to him by the bond and mortgage, are corroborative of his intention to perform his promises, but the facts, that he did not endorse upon either the bond or mortgage an acknowledgment of the receipt or satisfaction of any interest, or give receipts or acquittances to Miss Passage, or leave any memoranda for the guidance or direction of his representatives, indicate that he was not fully determined that his promises should be executed, or that he would extend his benefaction to the ultimate relief of Miss Passage or her estate, from the obligation of the mortgage to

Tulane v. Clifton.

him.   His promise to pay the annuity was purely voluntary, and therefore was unenforceable at law for want of consideration. *Kearney's Exrs.* v. *Kearney, 2 C. E. Gr. 59; Youngs* v. *Shough, 3 Gr. 27.* It was a gratuity—a mere naked promise—which carried with it no right to the promisee.   He was under no obligation to continue it.   Hence, a promise to apply a portion of that annuity, in the future, to the satisfaction of a recurring indebtedness of the promisee to him, created no right in the promisee.   As the annuity was of his bounty, his application of it to the satisfaction of a debt due to him would have been nothing more than the forgiveness of that debt, and his promise to make such application was nothing more than a promise to forgive the debt.   In such an application of the annuity the promisee, it is true, loses part of the bounty that otherwise might come to her, but such a loss is not the surrender of a *right*   She could not enforce its payment.   Nor does such a surrender benefit the promisor, for he gains no advantage in withholding that which he is not bound to give.   To give a consideration sufficient value to support a promise, " it must," to use the language of Mr. Justice Depue, in *Conover* v. *Stillwell, 5 Vr. 54, 57,* " be either such as deprived the person to whom the promise was made of a *right* which he before· possessed, or else conferred upon the other party a *benefit which he could not otherwise have had.*"

It is clear that Mr. Tulane's promise was not made binding upon him by a sufficient consideration.

His promise and intent, then, standing alone, unsupported by a consideration, or not put in technical form to raise a conclusive presumption of consideration, was not sufficient, in the law, to discharge the interest debt.   A debt on bond and mortgage cannot be extinguished by a mere statement of the creditor that he will not enforce it, or that he forgives it, or even by the receipt for the whole, when, in fact, a part only has been paid.   Where the purpose is to voluntarily extinguish such a debt, it must be executed by an instrument as solemn as the instrument by which the debt is created.   *Irwin* v. *Johnson, 9 Stew. Eq. 347.*

Nor can equity relieve against a case of this apparent hardship by holding that the voluntary promise operates as an equitable release of the debt. In *Leddel's Exrs.* v. *Starr, 5 C. E. Gr. 274,* Chancellor Zabriskie expressed the opinion that when a creditor, by written or parol declaration, with reference to a debt, or by conduct tantamount thereto, has declared or agreed that the debt shall be relinquished or given up, or that it has been so relinquished or given up, a court of equity will consider the declaration or agreement an equitable release of the debt, and will not permit the representatives of the promisor to enforce its payment. But this doctrine was emphatically disapproved by the court of errors and appeals in *Irwin* v. *Johnson,* above cited. In that case, a father told his daughter that, upon his decease, two mortgages belonging to him, which encumbered the daughter's property, should be hers, and it was held in this court, that the father's promise operated as an equitable release of the mortgages, under the authority of *Leddel's Exrs.* v. *Starr.* But, upon appeal, Mr. Justice Reed, who wrote the opinion of the court of errors and appeals, said : " The recognition of a doctrine which permits a mortgage to be extinguished by a verbal declaration of the debtee that he did not intend to insist upon its payment, would seem to break down not only the rule already mentioned," [the legal rule above stated] " but that which forbids the revocation of an instrument by an act less solemn than the act creating it. Here there is neither a payment nor an agreement for good consideration to discharge, nor a technical release under seal."

But it is insisted that, if there be neither an enforceable agreement, nor that which will operate as an equitable release of the debt, in this case, there is at least sufficient to show that the unenforceable agreement was executed, and that, thereby, the disputed interest, now claimed by the administrators of Mr. Tulane, went to Miss Passage by way of completed gift. Delivery is essential to the completion of a gift. When a thing given is capable of actual delivery, there must be such a delivery, and where there can be no actual delivery, there must be some act equivalent to it. "It must be," said Chancellor Kent (*2 Kent Com. 439*),

"*Secundum sejectam materiam*, and be the true and effectual way of obtaining the command and dominion of the subject." As has been seen, the true and effectual way to voluntarily deliver up or forgive a debt, is to release it by an instrument of due solemnity. The delivery of such an instrument is a delivery of the forgiveness of the debt, and the best delivery that can be made of forgiveness, and therefore it is necessary in the execution of an agreement to forgive the debt, and the only delivery which will make such voluntary forgiveness a completed gift. Between the promise and the limit within which the debt may be collected by process of law is the *locus pœnitentiœ*, within which the promisor may draw back from his voluntary agreement. During that time, acts merely indicative of intention, which do not prejudice the promisee, are not an execution of the promise. In the case in hand, the mere reduction of the amount of the annuity paid to Miss Passage, and failure to exact prompt payment of the interest on the mortgage, as, from time to time, it became due, were acts which indicate Mr. Tulane's purpose to observe and keep his promise, but they did no injury, and therefore are not irrevocable steps in the performance of his agreement. That they were not intended by him to be an execution of his promise, is forcibly suggested by the facts that the amount of the reduction of the annuity did not exactly accord with his agreement, and that he refrained from making an endorsement acknowledging payment of the interest upon either the bond or the mortgage, which is so customary in investments through those instruments. It remains uncertain that his real, undisclosed and, perhaps, concealed purpose may not have been to relieve Miss Passage from present payment and anxiety on account of the interest, but to retain his legal right to future payment, to be enforced when he pleased, either against her, in her lifetime, or against her estate, in the hands of strangers to his bounty, after her death.

I do not perceive any ground upon which the defendants' claim can be maintained, and I will therefore decree that the complainants are entitled to be paid the interest in dispute.