The complainant files its bill alleging that on the blank day of September, 1926, it and defendant company entered into an agreement, wherein the defendant agreed to convey to the complainant a certain tract of land therein described, for the sum of $185,000. The complainant agreed to secure the payment of said sum by the execution of a bond and mortgage in like amount, payable within ten years, with the obligation of paying $5,000 on account on the principal at the expiration of each year after the first year.
It was further provided that "within sixty days after having acquired title to the lands and premises, the party of the second part [the complainant] agrees to commence the erection of a semi-fireproof two-story garage and five-story apartment house containing at least one hundred one and two-room apartments, and which shall be completed in every detail on or before June 15th, 1927.
"Further to execute and deliver a bond in the sum of $200,000, with Joseph S. Naame as surety to guarantee such erection and completion, and as further security to assign a certain policy of insurance upon the life of said Naame, as additional protection for the performance of said agreement."
That the complainant complied with the provisions in said agreement by executing and delivering the bond and mortgage referred to therein, and by constructing an apartment house thereon, but, instead of building an apartment house containing one hundred apartments, constructed one containing one hundred and seventy-two apartments; but no garage was constructed, as is provided in the agreement, for the reason hereinafter to be stated.
That approximately two weeks after the execution and delivery of the bond and mortgage referred to in the agreement, *Page 388 
Joseph S. Naame, president of complainant company, approached Louis Satanov, president of the Louis Satanov Real Estate and Mortgage Corporation, defendant herein, and stated to him that the complainant preferred not to build the semi-fireproof two-story garage referred to in the agreement, and in lieu thereof would build an apartment house containing one hundred and seventy-two apartments, if said real estate and mortgage corporation would release complainant from building said garage, and would agree to release from the operation of said mortgage a portion of the land described therein, being the lands and premises upon which the garage was to be constructed.
The said Satanov, acting for and on behalf of said real estate and mortgage corporation, and with authority so to do, agreed with the said Naame, acting for and on behalf of complainant, that if complainant would construct the enlarged apartment house, it would be released from building said garage and said real estate and mortgage corporation would release the land specifically described herein from the operation, effect and encumbrance of said mortgage.
That demand has been made of the defendant for said release, and that the defendant has refused to do so.
That as a bonus to be paid by complainant to the defendant, and after the execution and delivery of said bond and mortgage, complainant executed ten certain promissory notes payable to the order of Louis Satanov Real Estate and Mortgage Corporation one year after date, two years after date, three years after date, four years after date, five years after date, six years after date, seven years after date, eight years after date, nine years after date and ten years after date, and being in the following sums respectively: $925, $925, $900, $850, $825, $800, $775, $750 and $750. Said notes may be dated on the same day as date of said mortgage, to wit, October 15th, 1926, but they were not delivered until after the delivery of said bond and mortgage.
That no consideration passed for said notes, but they were intended as a bonus to be paid by complainant to said real estate and mortgage corporation, for the acceptance by it of said bond and mortgage. The agreement to pay the bonus *Page 389 
was made at and before the execution of the written agreement which comprehended all the agreement between complainant and the said Louis Satanov Real Estate and Mortgage Corporation concerning the transaction in question.
The prayer is, "that it be decreed that the defendant execute and deliver to complainant a properly executed and acknowledged release of the land specifically described in the bill, from the operation, effect and encumbrance of said mortgage, or that it be decreed that it has no lien thereon, by virtue of said mortgage, and that it be restrained and enjoined from transferring, assigning or in any wise disposing of the notes referred to in the bill; and that it be decreed that they be delivered up and surrendered to complainant as lacking a consideration; and that it be restrained and enjoined from assigning, transferring and setting over the bond and mortgage, except upon condition that it inform anyone to whom it may be assigned that it is subject to complainant's right to have the premises specifically described in the bill released from the operation, effect and encumbrance thereon."
The answer is a denial of the allegation of section 3, and alleges that complainant requested defendant to put in the agreement a release clause, which proposition was refused; and says that Louis Satanov was without authority to make any such agreement, and that there is no agreement in writing, wherein defendant agreed to release said or any lands from the lien of said mortgage.
At the hearing it was stated that the controversy concerning the notes, set forth and claimed to be as a bonus, had been settled.
The only question to be determined is, "is there an enforceable agreement between the parties hereto, wherein the defendant agreed to release from the effect of said mortgage the lands in question?"
The statute of frauds and perjuries (Comp. Stat. p. 2612 §5) reads:
"That no action shall be brought [4] upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them * * * unless the agreement * * * shall be in writing and signed * * *." *Page 390 
 32 A.L.R. 878 gives as rule 3 —
"Rule that oral release, discharge or assignment is invalid by reason of the statute of frauds," and cites Irwin v. Johnson,36 N.J. Eq. 347, as a case "involving a debt secured by mortgages, that a parol declaration of an intention to release the debt does not operate as an equitable relase."
"Where the purpose is to voluntarily extinguish a mortgage debt, it must be executed by an instrument as solemn as the instrument by which the debt is created." Tulane v. Clifton,47 N.J. Eq. 351.
 Smith on Frauds, p. 505 § 362 —
"The general rule is that a mortgage, whether considered as vesting the fee in the mortgagee, or as vesting in him a security for specified purposes, leaving the fee in the mortgagor, can only be released in writing under the statute of frauds. On its face it purports to convey an interest in lands subject to defeasance. Citing Van Keuren v. McLaughlin, 19 N.J. Eq. 187,
and Clark v. Condit, 18 N.J. Eq. 358, which held that an equity of redemption was a right or estate in lands, and cannot be released except in writing."
Stevens v. Turlington, 186 N.C. 191; 119 S.E. Rep. 210;32 A.L.R. 870, the case annotated, and under which annotation the rule above is quoted, held "that an unexecuted verbal agreement made by a mortgagee for a valuable consideration to release a real estate mortgage does not come within the statute of frauds of that state, because a distinction is made between contracts to sell or convey which are the words used in the act, and the contracts or agreements made between vendor and vendee, mortgagor and mortgagee, after that relation between them is established, and which are intended to terminate that relation."
Our statute is much broader in its terms. Supra.
There can be no doubt that a mortgage is such an interest in land as the statute requires to be in writing.
In Hartman v. Powell, 68 N.J. Eq. 293 (at p. 296), the late Vice-Chancellor Grey said: "The terms of that statute declare that the force and effect of a parol agreement, creating an interest in lands, shall be to pass an estate at will only, whether it be asserted in law or in equity. Courts of equity *Page 391 
have, however, in certain special cases, given relief against the operation of that statute, usually for the enforcement of the declared purpose of that act, as a statute to prevent frauds. Bills filed by a party who has performed his side of a parol bargain for the conveyance of lands to compel the other party specifically to perform the parol agreement, and other cases, where the enforcement of the statute will itself operate as a fraud, are within this class.
"In this state the court of errors and appeals has, with respect to this action of the statute of frauds, declared that in all cases in which any court has validated parol contracts passing an interest in land, the contract itself has been required to be proved to the point of demonstration. Lawrence
v. Springer, 49 N.J. Eq. 289; Barbour v. Barbour, 51 N.J. Eq. 267.
"It is proper, therefore, in this suit, in which the complainant's asserted right is in direct contravention of the statute of frauds, to inquire whether the complainant presents such a case as under these decisions amounts to a demonstration of her equity."
This case does not come within the accepted rule as explained by Vice-Chancellor Leaming in Polakoff v. Halphen, 83 N.J. Eq. 126
(at p. 128), where he said: "An examination of these cases will disclose the accepted rule in this state to be that when the agreement or license, whether founded in parol or in writing, is clearly established and includes either express or implied authorization by the licensor for the licensee to occupy the land of the licensor, and the license has been executed by possession in such manner that its revocation would be operative as a fraud upon the licensee, a court of equity will protect the licensee such rights as the licensor expressly or impliedly conferred. This is indeed no more than an equitable application of the essential principles of estoppel as applied in Short v.Taylor, and approved in Lawrence v. Springer, supra."
The bill will be dismissed. *Page 392