262 N.J. Super. 133 (1993)
620 A.2d 433
METROBANK FOR SAVINGS, FSB, PLAINTIFF-APPELLANT,
v.
NATIONAL COMMUNITY BANK OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1992.
Decided February 9, 1993.
*136 Before Judges MICHELS, BAIME and WALLACE.
William L. Gold argued the cause for appellant (Brown, Gold & Beck, attorneys; Mr. Gold, on the brief).
Roy J. Evans argued the cause for respondent (Evans, Hand, Allabough & Amoresano, attorneys; Mr. Evans, on the brief).
The opinion of the court was delivered by WALLACE, J.S.C. (temporarily assigned).
Plaintiff, Metrobank For Savings, FSB, appeals from a summary judgment of the Chancery Division in favor of defendant, *137 National Community Bank of New Jersey, which declared defendant's mortgage on the premises was senior to plaintiff's mortgage for all purposes and permitted defendant to direct the Sheriff of Bergen County to sell the subject property with the priority of mortgages established by the court.
Claiming essentially fraud, plaintiff had instituted this action to compel defendant to subordinate its mortgage. The Chancery Division held that the oral subordination agreement alleged by plaintiff was barred by the Statute of Frauds. The trial court concluded that subordination was akin to a release of mortgage, and therefore, an agreement to subordinate is a contract for the sale of an interest in or concerning real estate subject to the Statute of Frauds. Plaintiff contends that the judgment should be reversed because; (1) the Statute of Frauds does not apply to a subordination of mortgage; (2) if the Statute of Frauds applied, it had been satisfied; (3) its mortgage is subrogated to the right of defendant's mortgage and, therefore, is senior; and (4) defendant is equitably estopped from denying the subordination. We find no basis to disturb the Chancery Division's judgment and affirm.

STATEMENT OF FACTS
In August 1989, Jay and Lisa Cohen sought and obtained a $500,000 loan from plaintiff to refinance mortgage liens on their property in Demarest, New Jersey. At that time, defendant held three mortgages on that property: a December 22, 1987 construction mortgage, with an outstanding balance of approximately $460,000 (Construction Mortgage); a January 8, 1988 second mortgage, securing debts to defendant of the Cohens' furniture business, in an unspecified amount (Guaranty Mortgage); and a July 26, 1989 mortgage, with a balance outstanding of approximately $40,000 ($40,000 Mortgage).
On August 21, 1989, the day of closing on the $500,000 loan from plaintiff, the Cohens' attorney, Michael Sassano, determined that after covering the Construction Mortgage and closing expenses, only approximately $25,000 would be left from *138 the $500,000 for payment on the Guaranty Mortgage and the $40,000 Mortgage. According to Sassano, he telephoned Alan DeFeo, then a commercial loan officer for defendant, who agreed to subordinate the remaining Guaranty Mortgage and the $40,000 Mortgage for the additional $25,000 payment "and work it out with Cohen at some point in the future". Sassano sent a telefax at 3:45 p.m. that day to DeFeo requesting confirmation of the agreement to subordinate. No response was received. Upon closing, Sassano certified that plaintiff's new $500,000 mortgage had first lien position.
On August 24, 1989, Sassano hand-delivered to the drive-in window of defendant's Englewood branch two letters, two checks and a subordination[1] (or postponement) agreement, all in one envelope. The three-day delay, he said, allowed for a three-day right of rescission. One letter, addressed to defendant's Hasbrouck Heights office to the attention of "Mortgage Payoff Department/Ms. Deborah Ann Zika," covered a check for $460,261.32 for payoff of the Construction Mortgage. The notation, "Cohen mortgage payoff # XXX-XXX-X" was included on the check. The other letter, addressed to DeFeo in the Englewood branch, covered a check for $25,000 for payment on "the above mortgage," the referenced mortgage being that "dated 7/26/89", the $40,000 mortgage. The check in the amount of $25,000 included the notation, "Cohen mortgage payoff Book 7755 Page 637". This was the same mortgage referenced in the letter to DeFeo. The letter to DeFeo further said, "This will also confirm that the following mortgages will be postponed to the new mortgage at this time and that the same will be disposed of in the very near future," listing the 1988 Guaranty Mortgage and the July 1989 $40,000 Mortgage, and requested execution and return of the enclosed subordination agreement for both intervening mortgages. Defendant cashed the $460,261.32 check on August 29, 1989, and the first *139 mortgage was discharged. Defendant cashed the $25,000 check on September 18, 1989.
On September 20, 1989, defendant loaned the Cohens an additional $75,000, secured by the same property, which expressly included $25,424.66 to be paid on their account for payoff of the commercial loan. This represented the balance on the July 26, 1989 $40,000 Mortgage, which was then paid in full. No subordination agreement was ever executed. However, Sassano did not realize this until around March 1990, when he discovered the title insurance policy showed that defendant still held the first lien.
Defendant's January 8, 1988 Guaranty Mortgage is now the first lien of record, followed by plaintiff's mortgage and defendant's September 20, 1989 loan for $75,000. Defendant denied plaintiff's requests to acknowledge subordination of the Guaranty Mortgage to plaintiff's mortgage.

I
We first consider whether an agreement to subordinate is subject to the Statute of Frauds, N.J.S.A. 25:1-1 to -9. The Statute of Frauds provides in pertinent part:
No lease, estate or interest, either of freehold or term of years, or any uncertain interest of, in, to or out of any real estate, shall be assigned, granted or surrendered, unless it be by deed or note in writing, signed by the party so assigning, granting or surrendering the same, or his agent thereunto lawfully authorized by writing, or by act and operation of law.
N.J.S.A. 25:1-2.
We have found no New Jersey case that has decided this issue. It is settled, however, that both a mortgage and a release from a mortgage obligation must be in writing. Joseph S. Naame Co. v. Louis Satanov Real Estate and Mortgage Corp., 103 N.J. Eq. 386, 390, 143 A. 531 (Ch. 1928), aff'd on other grounds, 109 N.J. Eq. 165, 147 A. 436 (E. & A. 1929). Also, a surrender of an interest in real estate must be in writing. N.J.S.A. 25:1-2. Further, a contract for the sale of an interest *140 in or concerning real estate is not binding unless in writing. N.J.S.A. 25:1-5d.
Black's Law Dictionary, 1279 (5th ed. 1979) defines subordination agreement as an "agreement by which the subordinating party agrees that its interest in real property should have a lower priority than the interest to which it is being subordinated." Thus, a subordination agreement is an agreement to accept a lower priority for a lien than would otherwise be due. See 29 New Jersey Practice, Law of Mortgages, § 115, at 535-40 (Roger A. Cunningham & Saul Tischler) (1975) (describing priority as affected by subordination agreements). Normal priorities, which rely on the legal rule, "first in time, first in right," as well as the equitable requirement of notice, are effected by the recording statutes. N.J.S.A. 46:16-1 to -14; Cunningham & Tischler, supra, § 115 at 539 n. 67. Subordination agreements are expressly included in the recording statutes. Apart from any operation of the Statute of Frauds, an alleged subordination agreement would be void and of no effect against subsequent mortgages without notice if not recorded. N.J.S.A. 46:22-1. This is because the instruments entitled to be recorded include "releases or postponements in which the intention to operate as a postponement or waiver of priority of the lien of a judgment ... or recorded mortgage or mortgages to the lien and operation of a mortgage or mortgages recorded ... is plainly manifested." N.J.S.A. 46:16-1c. Recording is not at issue here. We note however, this section of the recording statute includes both postponements of priority and releases. We believe this adds further support to the trial judge's conclusion that releases and postponements are both surrenders of interests in land and are subject to the Statute of Frauds.
Plaintiff points to authority in other jurisdictions holding that subordination agreements are not within the Statute of Frauds. A recent case cited by plaintiff is North Georgia Savings & Loan Ass'n v. Corbeil, 177 Ga. App. 523, 339 S.E.2d 779, 780 (1986). However, in a concurring opinion in that case, two *141 judges joined in expressing dismay in having to reach that conclusion based on Georgia Supreme Court precedent, because they found that the rule encourages doubt and therefore litigation. Id. 339 S.E.2d at 781 (Deen P.J., concurring and Beasley, J., concurring specially).
We think the better view is that expressed by Judge O'Halloran in his conclusion that a subordination of mortgage is akin to a release and therefore an agreement to subordinate must be in writing to be enforceable. Moreover, characterization of a subordination agreement as a surrender of an interest in land is reasonable given the common effect of lowered priority, which in many cases may result in loss of the entire interest. We conclude that a subordination agreement is not enforceable unless it is in writing and signed by the party so subordinating.

II
Plaintiff argues that even if the Statute of Frauds applies it does not bar this action because the check for $25,000 endorsed by defendant constituted a writing sufficient to satisfy the Statute of Frauds. Defendant responds that the check endorsement cannot constitute a sufficient writing because the check on its face belies the alleged agreement by referring to payoff of the $40,000 Mortgage only. We agree with defendant's position.
The writing required by the Statute of Frauds must contain the essential terms of the contract, but such terms may be written at different times in different places. Sutton v. Lienau, 225 N.J. Super. 293, 300, 542 A.2d 473 (App.Div. 1988), certif. denied, 111 N.J. 650, 546 A.2d 559 (1988). A memorandum evidencing the contract must be signed by the party sought to be bound. Id. Endorsement and cashing of a check may bind a party. Herzog v. Tidaback, 67 N.J. Super. 14, 18, 169 A.2d 726 (Ch.Div. 1961).
*142 Plaintiff contends that the August 24, 1989 letter from Sassano to DeFeo together with the $25,000 check endorsed by defendant, constitute a sufficient writing. Plaintiff adds that the terms of the alleged subordination agreement are set out in the letter, which references the check, and defendant's signature is on the check. However, even assuming the letter was sent with the check, we conclude the letter and the check cannot be considered an integrated writing because the notation on the face of the check is contrary to the terms relied on in the letter.
The notation on the check says, "Cohen mortgage payoff Book 7755 Page 637." This is consistent with defendant's claim that it understood that the check was solely to pay down the $40,000 Mortgage, the one recorded in Book 7755, page 637. It is also consistent with the first paragraph of the letter, stating "Enclosed herewith please find our check no. 4150 in the sum of $25,000.00 representing payment on the above mortgage [the $40,000 Mortgage]."
However, the second and third paragraphs of the letter, on which plaintiff relies for the alleged agreement, are not consistent with the check notation. The second paragraph states, "This will also confirm that the following mortgages will be postponed to the new mortgage at this time and that the same will be disposed of in the very near future." The 1988 Guaranty Mortgage and the $40,000 Mortgage are then identified. We agree with defendant that because the check specifically references only one of the two intervening mortgages, it cannot be a signed writing sufficient to evidence an alleged agreement to subordinate both mortgages. Furthermore, the check notation, like the first sentence of the letter, indicates that the check was not consideration for subordination of two mortgages, but rather a "payoff" (actually paydown) of one of the mortgages.
Given the ambiguity of the letter and the clear indication on the check cashed by defendant that the money was meant *143 solely in payment for the one mortgage identified, we find the documents insufficient to satisfy the Statute of Frauds.
Plaintiff further argues that defendant's acceptance of the two checks, for $460,261.32 and $25,000, for payoff and pay down of two identified mortgages, was conditioned on acceptance of the subordination described in the August 24 letter, and therefore the Statute of Frauds is wrongly used here as an instrument of fraud. However, such a condition is not evident on the checks, nor is it so stated in the letter. The letter merely states confirmation of the alleged agreement. Even the written postponement agreement that allegedly accompanied the letter and checks, which was never signed by defendant, does not refer to any such condition. Again we conclude the documents lack the required integration to satisfy the Statute of Frauds.

III
Plaintiff further argues that even if the alleged subordination agreement is barred by the Statute of Frauds, plaintiff's mortgage takes priority through operation of the equitable doctrine of subrogation, which effects a surrender "by operation of law," as provided as an exception in N.J.S.A. 25:1-2. Defendant responds that subrogation of a new mortgagee to the priority rights of an old mortgagee occurs only where the new mortgagee lacks knowledge of intervening encumbrances. Judge O'Halloran found no reason for equitable relief where the single signed writing  the endorsed $25,000 check  was contrary to the equitable right claimed. We agree with the view expressed by Judge O'Halloran.
When a lender advances money to pay off a mortgage, the new mortgagee may be subrogated to the priority rights of an old mortgagee by assignment or by express agreement with the debtor or creditor. Cunningham & Tischler, supra, § 147 at 674. Here, there was no assignment, nor does plaintiff claim an agreement to subrogate. A mortgagee who *144 accepts a mortgage whose proceeds are used to pay off an old mortgage is subrogated to the extent of the loan only where the new mortgagee lacks knowledge of other encumbrances. Trus Joist Corp. v. Nat'l Union Fire Ins. Co., 190 N.J. Super. 168, 179, 462 A.2d 603 (App.Div. 1983), rev'd on other grounds sub nom. Trus Joist Corp. v. Treetop Assoc., Inc., 97 N.J. 22, 477 A.2d 817 (1984). Without an agreement, subrogation is effective only where the new mortgagee is without actual knowledge of the existence of junior encumbrances. Cunningham & Tischler, supra, § 147 at 675-76. However, where lack of knowledge is due to negligence, subrogation is still effective. Id. at 676. Here, plaintiff was not ignorant, through negligence or otherwise. To the contrary, plaintiff admittedly knew of the two intervening mortgages. Where there is actual knowledge, the new lender is not entitled to subrogation absent a stipulation of subrogation or formal assignment.[2]Id. at 676.
Moreover, as an equitable doctrine, subrogation is applied only in the exercise of the court's equitable discretion. Goldome Realty Credit Corp. v. Harwick, 236 N.J. Super. 118, 126, 564 A.2d 463 (Ch.Div. 1989). Courts will apply the doctrine to prevent unjust enrichment of junior encumbrances, Trus Joist, supra, 190 N.J. Super. at 179, 462 A.2d 603, or where there is both fraud and unjust enrichment, Equity Savings and Loan Ass'n v. Chicago Title Ins. Co., 190 N.J. Super. 340, 343, 463 A.2d 398 (App.Div. 1983). Here, even if plaintiff could show unjust enrichment, there is no showing of fraud.
Plaintiff advanced its money in reliance on Sassano's understanding that defendant would subordinate, based entirely on one telephone conversation with DeFeo. Even assuming DeFeo's authority to commit orally for defendant, Sassano ignored the contrary evidence  the lack of response to the August 21, 1989 fax  and without any follow-up or inquiry of any kind, not only closed on August 21 but disbursed the money on August *145 24. Plaintiff does not demonstrate that Sassano was fraudulently led to believe defendant agreed to subordinate. The evidence shows that Sassano disbursed the funds without written confirmation that plaintiff would have a first lien position after the loan transaction. Plaintiff has failed to prove fraud, and equitable subrogation is not available as a remedy here.

IV
The final argument advanced by plaintiff is that even if there was no agreement, defendant is estopped from denying subordination because plaintiff relied to its detriment on defendant's apparent agreement to subordinate. Defendant responds that it did not lead plaintiff to believe that it had agreed to subordinate. We agree. Accepting as true as we must for summary judgment purposes, plaintiff's assertion that DeFeo apparently agreed to subordinate in a telephone conversation on the day of closing, defendant's subsequent failure to respond to the fax or letter seeking confirmation rendered plaintiff's reliance unreasonable and unjustifiable.
Where a lender advances money in reliance on a subordination agreement by a junior encumbrancer, equitable estoppel prevents denial of that agreement. Weinstein v. Anderson, 102 N.J. Eq. 8, 11, 139 A. 602 (Ch. 1927). Equitable estoppel requires proof of "a misrepresentation or concealment of material facts known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse...." Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979). "The reliance must be reasonable and justifiable." Foley Machinery Co. v. Amland Contractors Inc., 209 N.J. Super. 70, 75, 506 A.2d 1263 (App.Div. 1986) (citation omitted).
Even if we assume the alleged agreement to subordinate was a misrepresentation by defendant, the record is devoid of any *146 proof that plaintiff's reliance on a telephone conversation was reasonable. Far from luring plaintiff into believing that defendant consented to subordination, defendant's actions almost entirely communicated the contrary. Defendant did not respond to the August 21, 1989 fax from Sassano requesting confirmation of an agreement. Despite this lack of confirmation, Sassano disbursed the checks on August 24, 1989 under cover of a letter asserting confirmation of an agreement to subordinate. Again, defendant did not respond, and did not sign nor return the subordination agreement as requested.
Plaintiff contends that defendant lured it into believing an agreement existed by waiting until September 18, 1989 to cash the $25,000 check. We failed to discern why the failure to immediately cash the check should have any impact on the outcome of this issue. The transaction had already been completed. Whether defendant cashed the $25,000 check on the day of receipt or waited twenty-five days later to cash the check, the result is still the same. Since the loan proceeds were disbursed on August 24, 1989 that is the date we should look to determine whether plaintiff's reliance was reasonable. We are satisfied that under the circumstances of this case, there is no genuine issue of material fact concerning plaintiff's reliance. Unquestionably, any reliance by plaintiff here was not reasonable.
Accordingly, the summary judgment of the Chancery Division is affirmed.
NOTES
[1] The terms subordination and postponement are used interchangeably.
[2] An assignment of a mortgage must be in writing. N.J.S.A. 46:9-9.