808 A.2d 856 (2002)
354 N.J. Super. 557
FIRST UNION NATIONAL BANK, Plaintiff-Respondent,
v.
Merwin NELKIN and Elaine Nelkin, Defendants, and
Bankers Trust, as Trustee, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 2002.
Decided October 25, 2002.
*857 William M.E. Powers, Jr., Medford, attorney for appellant (Edward W. Kirn, III, on the brief).
Zucker, Goldberg & Ackerman, attorneys for respondent (Thomas A. Szymanski, Mountainside, on the brief).
Before Judges BRAITHWAITE, LINTNER and PARKER.
The opinion of the court was delivered by LINTNER, J.A.D.
This is a dispute between two banks, Bankers Trust and First Union National Bank (First Union), concerning the priority given to their respective mortgage liens. *858 Judge Span entered judgment in favor of First Union, finding Bankers Trust's mortgage lien subordinate to the open end mortgage held by First Union. Bankers Trust appeals and we affirm.
On September 9, 1999, First Union filed a Chancery Division complaint seeking foreclosure against Merwin and Elaine Nelkin, mortgagors, resulting from their default on a $100,000 note secured by a mortgage on their residence dated February 13, 1989. In October 1999, First Union amended its complaint adding defendant, Bankers Trust, as a defendant after a title search revealed the existence of another mortgage on the property in the name of Bankers Trust recorded subsequent to First Union's 1989 mortgage. Neither defendant answered, and on April 7, 2000, First Union obtained a default judgment against both the Nelkins and Bankers Trust. At the sheriff's sale on June 21, 2000, a third-party bidder, J. Holder Inc., bought the property for $175,500.
On June 28, 2000, Bankers Trust filed a motion seeking to set aside the sheriff's sale and vacate First Union's judgment. Judge Span denied Bankers Trust's motion to vacate the June 21 sheriff's sale and confirmed the sale and the judgment in favor of First Union. She also found Bankers Trust's lien subordinate to First Union's. The judge also denied Bankers Trust's motion for reconsideration, however, she ordered the proceeds of the sheriff's sale held in escrow pending the resolution of the dispute between Bankers Trust and First Union. We denied Bankers Trust's emergent application and dismissed its notice of appeal as interlocutory.
On December 13, 2000, and February 27, 2001, First Union introduced evidence of the amount it was due under its mortgage, and Bankers Trust objected to that evidence. An additional hearing was held on April 25, 2001, concerning the amount due, and on May 4, 2001, Judge Span issued a letter opinion finding that there was sufficient credible evidence to establish First Union's entitlement to its $110,592.88 judgment to be paid from the monies held in escrow. The balance of the escrow funds, a sum equal to $53,096.85, was to be turned over to Bankers Trust. Orders memorializing Judge Span's findings were entered on June 8 and July 31, 2001.
The facts, which are substantially undisputed, are as follows. Merwin and Elaine Nelkin executed a mortgage document entitled Open End Mortgage, account no. XXX-XXX-XXX, in the amount of $100,000 with The National State Bank (National) on February 13, 1989. National subsequently became New Jersey National Bank, which in turn became CoreStates Bank, N.A., which was acquired by First Union, thus becoming the holder of the open end mortgage on the Nelkins' condominium located at 955 South Springfield Avenue, Unit 604, Springfield Township, New Jersey.[1] The mortgage was recorded on March 13, 1989.
The open end mortgage was a revolving line of credit from which the Nelkins could obtain advances not to exceed $100,000 that would be repaid to First Union with interest. The Nelkins' right to obtain advances expired on February 13, 2004, whereas First Union's right to receive payment extended beyond the expiration date but ceased after the Nelkins (1) paid off all amounts due; and (2) were no longer permitted to request advances under *859 the credit agreement. The mortgage document stated that the mortgage remained open until the mortgagor pays "all amounts due" and the mortgagee is "no longer required to make loan advances" to the mortgagor.
In early 1997, the Nelkins began experiencing financial difficulties. They applied for a loan through Target Mortgage, Inc. (Target) to satisfy their obligations to National and other creditors. Target retained a closing attorney and obtained insurance in the amount of $160,000 from the Coastal Title Agency to ensure that Target had the first lien on the Nelkins' property.[2] Wilson Orozco of Target requested and obtained a payoff statement from First Union, which indicated that the amount needed to satisfy the First Union mortgage, as of April 18, 1997, was $99,628.58, after which a per diem amount of $28.53 was to be added to the payoff amount. The payoff statement also stated that if the payment is intended to close the "Revolving Line of Credit," the payor must "include written authorization from all individuals whose names appear on our account records." On April 23, 1997, the attorney for Target handled the closing, at which time the Nelkins executed and delivered a mortgage to Target in the amount of $165,000 against their Springfield Township condominium. The closing attorney issued a check dated April 28, 1997, made payable to First Union in the amount of $99,942.41 that was intended to fully satisfy the First Union mortgage. It could not be established, however, that Target or its attorney obtained and forwarded the necessary authorization from the Nelkins to close their open end mortgage account. Target recorded its mortgage on May 23, 1997. Target subsequently assigned its mortgage to Walsh Securities, Inc., who in turn assigned the mortgage to Bankers Trust.[3]
First Union received and posted a check in the amount of $99,942.41 from the closing attorney. According to First Union, there still remained an unpaid balance of $714.98. However, Bankers Trust maintains that its payment satisfied the Nelkins' mortgage in full. In any event, the open end mortgage held by First Union was never closed, and there was no evidence establishing that the required written authorization from the Nelkins was ever sent. Thereafter, the Nelkins drew upon the $100,000 line of credit established by the open end mortgage held by First Union, notwithstanding their execution of the subsequent mortgage and receipt of the Target loan.
The Nelkins thereafter defaulted on both mortgages, triggering the filing of the First Union complaint. The Nelkins then filed for Chapter 7 Bankruptcy on September 23, 1999. On January 3, 2000, the servicing agent for Bankers Trust obtained an order from the Bankruptcy Court allowing it to foreclose on the Nelkins' condominium. On March 30, 2000, Bankers Trust filed its own foreclosure complaint against the Nelkins, who defaulted. A judgment was entered in favor of Bankers Trust in June 2000.
Upon discovering First Union's mortgage, Bankers Trust searched its loan origination file for information about the Nelkins' mortgage. Although a copy of *860 the title insurance policy was not found, the search turned up a check that had been issued for $1,106 to pay the title insurance premium. Bankers Trust also found the HUD-1 settlement statement that was prepared by the closing attorney indicating that all prior liens, including that held by First Union, had been fully satisfied.
On July 7, 2000, Judge Span heard argument on Bankers Trust's motion to set aside the June 21 sheriff's sale and to vacate First Union's judgment. At that hearing, Bankers Trust presented a copy of the check sent by the closing attorney purportedly discharging the earlier mortgage. Judge Span reserved ruling on the motion to give First Union an opportunity to counter the evidence and to offer proof that it advanced additional funds to the Nelkins after it received the proffered payment.
On July 12, 2000, Bankers Trust notified the court that it was attempting to ascertain whether the payment to First Union was accompanied by a written authorization from the Nelkins to close the mortgage but that the Target closing file had been confiscated and retained by the Federal Bureau of Investigation (FBI). On August 28, 2000, Judge Span continued the hearing on Bankers Trust's motion to set aside the sheriff's sale at which time she noted that counsel for First Union provided the court with evidence that it had advanced additional funds to the Nelkins subsequent to the April 23, 1997, closing of the Bankers Trust mortgage. Bankers Trust pointed out that it was unable to get the Target closing file from the FBI and argued that the doctrine of equitable subrogation should be applied to elevate its position to that of First Union as it would be inequitable for First Union to apply the funds provided by Bankers Trust to pay down the mortgage and then to foreclose on the condominium.
Denying Bankers Trust's motion, Judge Span observed that the Nelkins' open end mortgage was not a traditional mortgage but an equity line of credit, which is more akin to a credit card because mere payment of the balance does not cancel or close the account. She pointed out that, like a credit card, an affirmative act on the part of the consumer is necessary to close the account. She found that although First Union's predecessor advised Bankers Trust's assignor of the proper procedure to be used to close the Nelkins' account, there was no proof to indicate that the procedure was followed. Judge Span concluded that the equities favored First Union and militated against subrogating Bankers Trust's mortgage to that of First Union.
On appeal, Bankers Trust argues that: (1) Judge Span erred in failing to apply the doctrine of equitable subrogation to elevate its priority position to that of First Union; and (2) First Union should be equitably estopped from asserting that its loan has priority over that of Bankers Trust.
We first examine the principles underlying the doctrine of equitable subrogation. The doctrine, with its "equity underpinnings," is used "`to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it.'" Culver v. Ins. Co. of North America, 115 N.J. 451, 455-56, 559 A.2d 400 (1989) (quoting Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171, 104 A.2d 288 (1954)). Subrogation rights are created in three different ways: (1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel the ultimate discharge of an obligation by the one who should in good conscience pay it. Culver, supra, 115 N.J. at 456, 559 A.2d 400.
*861 Generally, a new mortgagee is subrogated to the priority rights of an old mortgagee by either agreement or assignment. In the absence of such an agreement or assignment, a mortgagee who accepts a mortgage whose proceeds are used to pay off an older mortgage is equitably subrogated to the extent of the loan so long as the new mortgagee lacks knowledge of the other encumbrances. Metrobank for Sav., FSB v. Nat'l Community Bank, 262 N.J.Super. 133, 143-44, 620 A.2d 433 (App.Div.1993). In that situation, the new mortgagee by virtue of its subrogated status can enjoy the priority afforded the old mortgagee. Ibid. Equitable subrogation may still be afforded even though lack of knowledge on the part of the new mortgagee occurs as a result of negligence. Kaplan v. Walker, 164 N.J.Super. 130, 138, 395 A.2d 897 (App. Div.1978). On the other hand, the new lender is not entitled to subrogation, absent an agreement or formal assignment, if it possesses actual knowledge of the prior encumbrance. Metrobank, supra, 262 N.J.Super. at 143-44, 620 A.2d 433.
In addition to finding that the new mortgagee lacked knowledge of the preexisting encumbrance, application of the doctrine requires the court to find either: (1) the old mortgagee was unjustly enriched; or (2) the old mortgagee acted fraudulently. Id. at 144, 620 A.2d 433 (citing Equity Sav. and Loan Ass'n v. Chicago Title Ins. Co., 190 N.J.Super. 340, 463 A.2d 398 (App.Div.1983); Trus Joist Corp. v. Nat'l Union Fire Ins. Co., 190 N.J.Super. 168, 462 A.2d 603 (App.Div. 1983), rev'd on other grounds sub nom., Trus Joist Corp. v. Treetop Assocs., Inc., 97 N.J. 22, 477 A.2d 817 (1984)). Being an equitable doctrine, "subrogation is applied only in the exercise of the court's equitable discretion." Metrobank, supra, 262 N.J.Super. at 144, 620 A.2d 433.
None of the prerequisites for imposing equitable subrogation are present here. Bankers Trust had knowledge of the First Union mortgage. Bankers Trust found the First Union mortgage when it conducted its title search in connection with the Nelkins' mortgage. The mortgage document evidencing First Union's mortgage not only identified it as an "Open End Mortgage" but set forth that the mortgage remained open until the mortgagor pays "all amounts due" and the mortgagee is "no longer required to make loan advances" to the mortgagor. Additionally, the agents representing Bankers Trust's interests were specifically advised that it was necessary to obtain authorization from the Nelkins to close the Revolving Line of Credit account. Despite this knowledge, Bankers Trust did not endeavor to obtain either a subrogation agreement or formal assignment. Bankers Trust's negligence did not affect its knowledge of the First Union mortgage but instead resulted in its failure to properly close the revolving line of credit, the nature and existence of which was actually known. As such, its reliance on the doctrine of equitable subrogation is misplaced.
The other prerequisites for the application of equitable subrogation are also absent. First Union was not unjustly enriched. After it received payment from Bankers Trust, First Union applied the payment to the balance owed by the Nelkins. Subsequently, First Union advanced additional funds to the Nelkins, thereby creating a new obligation, on which the Nelkins failed to make payments. By foreclosing on the Nelkins' property, therefore, First Union is not receiving a double payment for the amount owed by the Nelkins prior to Bankers Trust's payment. Rather, First Union is receiving the amount it is owed from subsequent advances it made to the Nelkins, which *862 were the direct result of Bankers Trust's failure to provide the necessary authorization to close the First Union account.
Moreover, there is no evidence that First Union defrauded Bankers Trust. The fact that the First Union mortgage was not a traditional mortgage but an open end line of credit was clear from the recorded mortgage document. Additionally, First Union advised Bankers Trust that written authorization was required to close the revolving credit account.
Bankers Trust's reliance on United Orient Bank v. Lee, 208 N.J.Super. 69, 504 A.2d 1215 (App.Div.1986), for its argument that it is entitled to equitable subrogation is misplaced. In United Orient, the Lees entered into a mortgage agreement with United Orient Bank. The Lees then refinanced their mortgage through Spencer Savings and Loan Association (Spencer), who requested a payoff statement from United Orient. Upon closing, Spencer sent a check to United Orient with an endorsement indicating it was payment in full for the Lees' mortgage, along with a letter stating the same. Instead of paying off the Lees' mortgage, United Orient applied monies paid by Spencer to a corporate account held by Mr. Lee. When the Lees defaulted on their mortgage payment, United Orient instituted foreclosure proceedings. Both the Lees and Spencer moved for summary judgment seeking to cancel United Orient's mortgage. We reversed the motion judge's denial of the motion, pointing out that it was clear from the amount of the check and its endorsement that the funds were intended to satisfy the Lees' debt and cancel the mortgage. We observed that United Orient, by accepting Spencer's check, was required to either comply with the limitations imposed by the endorsement and the instructions in the letter or return the check.
Judge Span accurately distinguished United Orient, observing that the mortgage in United Orient was a conventional mortgage, whereas First Union's mortgage was an open end equity line of credit. She correctly reasoned that, although a traditional mortgage may be closed simply upon payment of the amount due, an equity line of credit is akin to a credit card where payment alone does not close the account. Moreover, in United Orient the equities favored Spencer because United Orient failed to follow the conditions of payment, instead opting on its own to use the proceeds to satisfy a different account.
Here, by contrast, Bankers Trust had the first opportunity to avoid the loss resulting from the Nelkins' subsequent utilization of their line of credit by obtaining their written authorization before closing its mortgage loan. Judge Span appropriately exercised her equitable discretion placing the burden of loss on Bankers Trust. See Zucker v. Silverstein, 134 N.J.Super. 39, 52, 338 A.2d 211 (App.Div. 1975) ("[A]s between two innocent groups equity will impose the loss on the group whose act first could have prevented the loss.").
Finally, we find no support for Bankers Trust's claim that First Union should be equitably estopped from asserting its priority. Estoppel is designed to ensure that the loss is born by the party who "made the injury possible or could have prevented it." Foley Mach. Co. v. Amland Contractors, Inc., 209 N.J.Super. 70, 75, 506 A.2d 1263 (App.Div.1986). The doctrine is only applied in compelling circumstances where the interests of justice, morality and common fairness dictate. Palatine I v. Planning Bd., 133 N.J. 546, 560, 628 A.2d 321 (1993). Equitable estoppel requires proof of a misrepresentation or concealment of facts (1) known by the party allegedly estopped and unknown to *863 the party asserting estoppel; (2) done with the intention or expectation that it will be acted upon by the other party; and (3) on which the other party relies to its detriment. Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979). The reliance by the party asserting estoppel must be reasonable and justifiable. Palatine I, supra, 133 N.J. at 563, 628 A.2d 321.
As we have previously pointed out, Bankers Trust should not, under the circumstances here, be permitted to benefit from its failure to provide First Union with authorization from the Nelkins to close the First Union account. Its knowledge of the type of mortgage held by First Union and the necessity to obtain the required authorization combine to place Bankers Trust in the better position to prevent the loss incurred. Bankers Trust's assertion that the doctrine of estoppel applies to prevent First Union from asserting its priority is legally and factually unsupported and does not warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Because First Union is the plaintiff and held an open end mortgage, which is the subject matter of this appeal, we refer to the original mortgage, though issued and held by The National State Bank, as First Union's.
[2] Bankers Trust filed an amended complaint alleging negligence against both the closing attorney and the Costal Title Agency. Both were dismissed on summary judgment. Those summary judgment orders have not been made a part of this appeal.
[3] Because Bankers Trust is the defendant and holds the mortgage which is the subject matter of this appeal, we refer to its mortgage, though originated by Target, as the Bankers Trust mortgage.