NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2668-14T3

OCWEN LOAN SERVICES, LLC,

    Plaintiff-Respondent,

v.

MARLA WUEBBENS QUINN and
THOMAS QUINN,

    Defendants,

and

LOUISA WUEBBENS and
DAVID WUEBBENS,

    Defendants-Appellants.

> **APPROVED FOR PUBLICATION**
>
> **JULY 10, 2017**
>
> **APPELLATE DIVISION**

Argued October 6, 2016 – Decided October 24, 2016

Before Judges Fuentes, Carroll, and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-27321-09.

Richard A. Herman argued the cause for appellants.

Rajan Patel argued the cause for respondent (Law Office of Rajan Patel and Blank Rome LLP, attorneys; Mr. Patel, on the brief).

The opinion of the court was delivered by

CARROLL, J.A.D.

Defendants Louisa Wuebbens and David Wuebbens appeal from companion orders entered by the Chancery Division on January 5, 2015, granting partial summary judgment to plaintiff Ocwen Loan Servicing, LLC,[1] and denying defendants' motion for summary judgment. Applying equitable principles recognized by this court in <u>Sovereign Bank v. Gillis</u>, 432 <u>N.J. Super.</u> 36 (App. Div. 2013), Judge Margaret Mary McVeigh granted plaintiff's mortgage a lien priority over defendants' life estates in the mortgaged property. We affirm both orders, substantially for the reasons articulated by Judge McVeigh in her well-reasoned written opinion of January 5, 2015.

The essential facts are undisputed. By deed dated November 12, 2004, defendants conveyed their residential property in Little Falls to their daughter, Marla Wuebbens Quinn. Defendants retained a life estate in the property, and agreed to remain responsible for the maintenance and upkeep of the property, to pay all taxes assessed upon the property, and to maintain adequate insurance.

On December 2, 2005, Marla Wuebbens Quinn, her husband, Thomas Francis Quinn, and defendants executed a $260,000 mortgage on the

---

[1] Ocwen Loan Servicing, LLC is at times alternatively referred to as Ocwen Loan Services, LLC in some of the pleadings.

property in favor of IndyMac Bank, F.S.B. (the 2005 mortgage). The mortgage loan had a thirty-year term through December 2035, with an adjustable interest rate initially set at 1.000% and a maximum cap not to exceed 9.700%. The mortgage further provided that, because the borrowers were initially only making limited monthly payments, the addition of unpaid interest could increase the principal balance to 110% of the $260,000 loan amount, or $286,000.

On September 21, 2007, Marla Wuebbens Quinn refinanced the existing mortgage loan by executing a $380,000 note and mortgage in favor of IndyMac (the 2007 mortgage). Plaintiff alleges, and defendants do not dispute, that the title commitment obtained by IndyMac did not disclose the recorded life estates held by defendants. Consequently, the title commitment did not require defendants to execute the 2007 mortgage, and they did not do so. The new mortgage loan had a thirty-year term, through October 2037, and provided for a fixed annual interest rate of 6.625%.

Indymac's title commitment did reveal the existence of two open mortgages encumbering the property: its own 2005 mortgage, and a $60,000 second mortgage executed by the Quinns in 2006 in favor of another lender. Both mortgages were satisfied out of the proceeds of the 2007 mortgage loan, with Indymac receiving $265,269.45 to satisfy the 2005 mortgage, and the second lender

receiving $57,305.59 to discharge its mortgage. As a result, the 2007 mortgage to Indymac, signed only by Marla Wuebbens Quinn and not by defendants, became the sole mortgage lien on the property.

In May 2009, IndyMac filed a foreclosure action in the Chancery Division against the Quinns on the defaulted 2007 mortgage. Subsequent amendments to the complaint by IndyMac's assignees added defendants as parties to the action and, among other things, sought to equitably subrogate defendants' life estate interests in the property to plaintiff's mortgage.

On cross-motions for summary judgment, plaintiff sought an adjudication that defendants' life estates in the property were subject and subordinate to the lien of plaintiff's 2007 mortgage, plus taxes and insurance advanced by plaintiff and its predecessors while the loan was in default. In turn, defendants sought dismissal of the foreclosure complaint against them on the grounds that they did not sign the 2007 mortgage nor pledge their life estates in connection with the 2007 loan refinancing.

Applying the "equitable principles of Gillis" and the principles of replacement and modification recognized in the Restatement (Third) of Property — Mortgages (1997) ("the Third Restatement"), Judge McVeigh granted plaintiff's motion and denied defendants' motion. Specifically, the judge permitted plaintiff to step into the shoes of its prior mortgage which its own funds

satisfied. However, the judge "capped" the amount of plaintiff's priority at $260,000, and ruled that "[t]o the extent that the [2007] refinance exceeds the value of the [2005] mortgage, such a portion of the refinance does not maintain priority" over defendants' life estates.

Judge McVeigh rejected defendants' argument that a life estate is a prior property interest that is not subject to principles of equitable subrogation. The judge reasoned:

> A life estate has recognizable value. See U.S.C.A. §1396p(c)(1)(J) (referring to the purchase of a life estate as an asset). The same equitable princip[les] that allow one mortgage to take the place of another in priority are applicable when deciding priority between a life estate and the mortgage. Just as equity is concerned with the prejudice to the lenders of mortgages, here too we look at the prejudice to the parties.
>
> [Defendants] signed a mortgage in the amount of $260,000 as possessors of a life estate. While [defendants] may have signed the mortgage as an act of kindness and love to their daughter, the fact remains [defendants] were parties to the 2005 mortgage and thus subjected their life estate to this foreclosure action. This [c]ourt sees no procedural or substantive defect which would challenge the validity of the 2005 mortgage.
>
> At the time Marla Wuebbens Quinn signed the refinance with IndyMac, $265,269.45 was used to pay down the original $260,000 mortgage. [Defendants] are not prejudiced by having the refinanced mortgage take the place of the original mortgage, as they acknowledged that note and mortgage. Enforcing the

A-2668-14T3

refinanced mortgage against [defendants] puts them in the same position they were in as signers of the original mortgage. The life estates of [defendants] are subject to the refinance because of their participation in the signing of the original mortgage.

Additionally, the judge determined that defendants' life estates in the property were subject and subordinate to an additional $43,019.85 in taxes and insurance advanced by the various lenders in accordance with the terms of the mortgage documents. This appeal followed.

Our scope of review is limited. Decisions as to the application of an equitable doctrine are left to the sound discretion of the trial judge, and we will not substitute our judgment for that of the trial judge in the absence of a clear abuse of discretion. Kurzke v. Nissan Motor Corp. in U.S.A., 164 N.J. 159, 165 (2000).

On appeal, defendants argue that the trial court erred in subordinating their life estates to plaintiff's mortgage lien, thus allowing for the foreclosure of their life estates. Alternatively, they argue that the trial court erred in not conducting a hearing on the validity of the 2005 mortgage. We disagree. We have considered defendants' arguments and find them without merit. R. 2:11-3(e)(1)(E). We affirm substantially for

6

the reasons expressed in Judge McVeigh's cogent written opinion. We add the following comments.

Under the doctrine of equitable subrogation, "[a] refinancing lender whose security turns out to be defective is subrogated by equitable assignment 'to the position of the lender whose lien is discharged by the proceeds of the later loan, there being no prejudice to or justified reliance by a party in adverse interest.'" Equity Sav. and Loan Ass'n v. Chicago Title Ins. Co., 190 N.J. Super. 340, 342 (App. Div. 1983) (quoting Kaplan v. Walker, 164 N.J. Super. 130, 138 (App. Div. 1978)). Equitable subrogation is a remedy "'highly favored in the law.'" First Fid. Bank, Nat. Ass'n, S. v. Travelers Mortg. Servs., Inc., 300 N.J. Super. 559, 564 (App. Div. 1997) (internal citations omitted). As it is an equitable doctrine, it is applied only in the exercise of the court's equitable discretion. Metrobank for Sav., FSB v. Nat'l Cmty. Bank, 262 N.J. Super. 133, 144 (App. Div. 1993). Hence, "[e]quitable subrogation may only be imposed 'if the cause is just and enforcement is consonant with right and justice.'" Feigenbaum v. Guaracini, 402 N.J. Super. 7, 20 (App. Div. 2008) (quoting Standard Acc. Ins. Co. v. Pellechia, 15 N.J. 162, 173 (1954)).

In the context of mortgages, we have previously described the equitable subrogation doctrine as follows:

Generally, a new mortgage is subrogated to the priority rights of an old mortgage by either agreement or assignment. In the absence of such an agreement or assignment, a mortgagee who accepts a mortgage whose proceeds are used to pay off an older mortgage is equitably subrogated to the extent of the loan so long as the new mortgagee lacks knowledge of the other encumbrances. Metrobank[, supra, 262 N.J. Super. at 143-44]. In that situation, the new mortgagee by virtue of its subrogated status can enjoy the priority afforded the old mortgage. Ibid. Equitable subrogation may still be afforded even though lack of knowledge on the part of the new mortgagee occurs as a result of negligence. Kaplan[, supra, 164 N.J. Super. at 138]. On the other hand, the new lender is not entitled to subrogation, absent an agreement or formal assignment, if it possesses actual knowledge of the prior encumbrance. Metrobank, supra, 262 N.J. Super. at 143-44.

[First Union Nat'l Bank v. Nelkin, 354 N.J. Super. 557, 565-66 (App. Div. 2002).]

In Gillis, we relied on principles of "replacement" and "modification" that are technically distinguishable from the traditional application of equitable subrogation. Gillis, supra, 432 N.J. Super. at 46-49. There, we determined that, if a lender who holds a priority lien replaces it with a new mortgage via a refinancing, this replacement lien is given priority regardless of the lender's knowledge of other encumbrances. Id. at 47. Adopting "the Third Restatement's alternative approach, [we determined that] the pertinent limiting factor is not the new lender's knowledge, but instead whether there has been 'material

prejudice' to the intervening lienor." Ibid. (citing Third Restatement at § 7.6(b)(4)). Accordingly, we noted:

> We regard this as a sound approach. A proper judicial analysis of material prejudice will examine such aspects as the respective loan amounts involved, the interest rates, and, potentially, the loan terms. Actual or constructive knowledge by the refinancing lender, if it is the same original lender or it's corporate successor, should be irrelevant.
>
> [Id. at 51 (footnote omitted).]

In the present case, defendants' interest in the property takes the form of a life estate rather than a mortgage. Like Judge McVeigh, we do not view this as a meaningful distinction. Rather, we view Judge McVeigh's analysis, which centered on the presence or absence of material prejudice to defendants, as a logical extension of our holding in Gillis. We conclude, like Judge McVeigh, that the replacement of the 2005 mortgage lien with the 2007 mortgage did not prejudice defendants in any meaningful way. It is without doubt that defendants agreed to subordinate their life estate to the lien of plaintiff's 2005 mortgage. The trial court correctly "capped" plaintiff's mortgage priority at $260,000, and preserved the priority of defendants' life estates on the portion of the 2007 mortgage loan that exceeded that amount. Although capped at $260,000, the lien of plaintiff's 2005 mortgage over time could have risen to $286,000, and its interest rate

could have swelled to 9.700%.  In contrast, the 2007 mortgage had a fixed interest rate of 6.625%, and extended the maturity rate an additional two years.  As a result, we concur with Judge McVeigh that enforcing the 2007 mortgage against defendants puts them in the same position they were in as when they signed the 2005 mortgage.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION