NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1261-19

NEW YORK MORTGAGE
TRUST 2005-3 MORTGAGE-
BACKED NOTES, U.S. BANK
NATIONAL ASSOCIATION
AS TRUSTEE,

      Plaintiff-Respondent,

v.

ANTHONY E. DEELY,
CATHERINE DEELY,

      Defendants,

and

BANK OF AMERICA, N.A.

      Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**February 12, 2021**

**APPELLATE DIVISION**

Submitted January 27, 2021 – Decided February 12, 2021

Before Judge Alvarez, Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. F-043539-14.

Knuckles Komosinski & Manfro LLP, attorneys for appellant (John E. Brigandi, on the briefs).

Cooper Levenson, PA, attorneys for respondent (Jennifer B. Barr, on the brief).

The opinion of the court was delivered by

GEIGER, J.A.D.

Defendant Bank of America, N.A.,[1] appeals from November 17, 2017 orders granting summary judgment to plaintiff New York Mortgage Trust 2005-3 Mortgage Backed Notes, U.S. Bank as Trustee, and denying summary judgment to defendant, as well as a November 7, 2019 final judgment of foreclosure in this residential mortgage foreclosure action. Applying the principle of equitable subrogation, the trial court granted plaintiff's mortgage lien priority over defendant's mortgage, which secured a home equity credit line account (HECLA). We affirm both orders and entry of the final judgment of foreclosure.

We derive the following facts from the record. On March 15, 2005, the Deelys executed a $664,000 mortgage to First Interstate Financial Corp. (FIFC) secured by their residence in Beach Haven (the Property), which was recorded on March 23, 2005. On June 21, 2005, the Deelys executed a

---

[1] References to defendant refer only to Bank of America, N.A. We refer to defendants Anthony E. Deely and Catherine Deely (collectively, the Deelys), who have not participated in this appeal, by name.

mortgage to Fleet National Bank (Fleet) securing an $80,000 HECLA (the Fleet Mortgage), which was recorded on August 10, 2005.

The Deelys then refinanced their primary mortgage. American Abstract Agency (the Title Agency) performed a title search for the refinancing transaction between the Deelys and plaintiff. Closing took place on September 16, 2005, at the Title Agency's office. The Deelys executed a $726,000 mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for The New York Mortgage Company, LLC, which was recorded on September 26, 2005. Of the loan proceeds, $667,922 was used to pay off and discharge the FIFC mortgage. On January 2, 2014, MERS assigned the mortgage to New York Mortgage Trust, Inc. The assignment was recorded on January 15, 2014. On March 23, 2015, New York Mortgage Trust, Inc., assigned the mortgage to plaintiff. The assignment was recorded on April 21, 2015.

At the time of the closing, defendant, who was Fleet's successor, advised the Title Agency in writing that the Fleet mortgage had a zero balance after Anthony Deely made a $16,884.16 payment. The HUD-1 settlement statement stated that the Fleet mortgage was "to be [paid] off prior to closing."

The marked-up title insurance commitment report required payoff of the $80,000 Fleet HECLA mortgage. At closing, the Title Agency's representative

marked the Fleet mortgage payoff requirement as "Removed." The loan origination file contained a note that the mortgage was paid off on September 16, 2005 at 11:00 a.m.

On November 6, 2007, the Title Agency wrote to defendant indicating that, while the $80,000 Fleet mortgage had been paid in full, a discharge of mortgage had not been recorded. The Title Agency requested that defendant discharge the Fleet mortgage. Defendant did not respond, and the Fleet mortgage was never discharged.

Without notice to plaintiff, the Deelys increased their credit line on the HECLA account twice and withdrew payments on the line of credit. The credit line was first increased to $110,000 on December 29, 2006, then increased to $200,000 on July 11, 2007. Both loan modification agreements were notarized by Carol Scholey, the same manager who wrote the letter stating the Deelys HECLA account was paid off.

On February 1, 2013, the Deelys defaulted on their mortgage with plaintiff. A September 28, 2015 foreclosure search report listed the Fleet mortgage in first position and plaintiff's mortgage in second position.

On October 17, 2014, plaintiff filed its complaint. Thereafter, plaintiff filed a second amended complaint adding a third count demanding judgment equitably subrogating the priority of its mortgage to that of the FISC mortgage,

4

giving it lien priority over the Fleet mortgage. The Deelys did not contest the foreclosure; default was entered against them.

On September 29, 2017, plaintiff moved for summary judgment to have its mortgage equitably subrogated to first lien position. In support of its motion, plaintiff submitted the certification of Anne Nachman, the Title Officer of the Title Agency. Nachman certified that the Title Agency maintained business records "for the purpose of real estate and mortgage transactions" that "are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the course of business activity conducted regularly by [the Title Agency]." Nachman further certified that it was the "regular practice of [the Title Agency] to make these records" and the attached records were "true and accurate copies."

Attached to the certification were a settlement statement, a payoff notation made by the Title Agency in its file, and a payoff letter from Scholey stating that Anthony Deely had "paid the Fleet loan to a zero balance." The payoff letter was required by the Title Agency prior to closing. Also attached were the marked-up title endorsement and commitment. The commitment expressly required the Deelys to "[p]ay and satisfy" the FIFC and Fleet mortgages.

Defendant argued that material facts were in dispute because "[p]laintiff failed to submit admissible evidence that its mortgage was either intended to be superior, or that its mortgage was used to satisfy a prior loan." Defendant claimed that instead, plaintiff requested the trial court to rely on a series of inferences based upon a certification of an employee of the Title Agency, that in turn, was not based on personal knowledge.

Defendant also argued that plaintiff had actual knowledge of Fleet's mortgage. Although the HECLA was paid down to zero, it remained an open-ended line of credit and was never discharged. In addition, the assignments of plaintiff's mortgage were recorded years after both HECLA modification agreements were recorded. Defendant claimed it would not be unjustly enriched since plaintiff deliberately loaned new funds to the borrower despite being aware of the Fleet mortgage. Finally, it took the position that the Restatement (Third) of Property: Mortgages (Am. Law Inst. 1997) (the Third Restatement) has not been adopted in full in New Jersey. Thus, defendant contended that plaintiff's actual knowledge of the Fleet mortgage precluded equitable subrogation.[2]

---

[2] Defendant did not address its cross-motion for summary judgment during oral argument. Implicit in the court's decision is that defendant was not entitled to judgment as a matter of law, which defendant does not dispute.

A-1261-19

The judge determined that Nachman's certification sufficed to admit the documents contained in the Title Agency's loan origination file as business records. Based on those records, the judge found the proceeds from plaintiff's loan were used to pay off the FIFC loan. Accordingly, the first element of equitable subrogation was met.

The marked-up commitment stating that both the FIFC and Fleet mortgages were paid off as required, coupled with the letter from defendant indicating there was a zero balance on the HECLA, sufficiently evidenced plaintiff's intent and requirement to hold a first lien position. The judge further explained that in this context, "actual knowledge is generally defined as being a lender who makes a loan, knowing that there's an intervening lien, and not requiring that it be paid off." In other words, payoff of the intervening lien was neither a condition nor intended. The court found "[t]hat is contrary to the facts and the evidence here."

The judge opined these same documents and Nachman's certification demonstrated "that it was the intent of the parties that those loans be paid off. And, therefore, any absence or omission in not requiring a discharge of [the] mortgage, not just a . . . payoff statement with a zero balance, at most, is negligence." Negligence "is insufficient to bar the application of the doctrine" of equitable subrogation.

A-1261-19

Relying on the analysis in <u>Sovereign Bank v. Gillis</u>, 432 N.J. Super. 36 (App. Div. 2013), the judge determined that plaintiff's mortgage should be equitably subrogated to first lien position. He granted plaintiff's motion for summary judgment and denied defendant's cross-motion. Because there were no other contested issues, the judge returned the case to the Foreclosure Unit as an uncontested case. Plaintiff moved for entry of final judgment. On November 7, 2019, a final judgment of foreclosure was entered, which provided in part that defendant's "mortgage [was] equitably subrogated for the first $667,922.03 pursuant to the order dated November 17, 2017." This appeal followed.

Defendant argues:

> PLAINTIFF IS NOT ENTITLED TO RELY UPON THE DOCTRINE OF EQUITABLE SUBROGATION.
>
> A.    Plaintiff Failed to Demonstrate That its Predecessor Expected to Hold a Superior Mortgage Lien Through Admissible Evidence.
>
> B.    Plaintiff is Precluded From Relying Upon the Doctrine of Equitable Subrogation as it Had Actual Knowledge of Defendant's Open Mortgage When it Originated its Loan.
>
> C.    Defendant Will Suffer Prejudice If Plaintiff's Mortgage is Equitably Subrogated.

8

We review a trial court's grant or denial of summary judgment de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

"[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley, 228 N.J. at 346 (quoting R. 4:46-2(c)).

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Inv'rs Bank v. Torres, 457 N.J. Super. 53, 65 (App. Div. 2018) (quoting Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994)); see also Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952) ("Since the execution, recording, and non-payment of the mortgage were

A-1261-19

conceded, a prima facie right to foreclosure was made out."). Here, the Deelys did not contest the validity of the mortgage, the amount of indebtedness, or their default. Accordingly, plaintiff made out a prima facie case for foreclosure.

At issue is whether defendant's earlier recorded mortgage was properly equitably subrogated to plaintiff's later recorded mortgage. Our scope of review of a trial court's decision to apply an equitable doctrine is limited. Ocwen Loan Servs., LLC v. Quinn, 450 N.J. Super. 393, 397 (App. Div. 2016). A decision to apply equitable subrogation is "left to the sound discretion of the trial judge, and we will not substitute our judgment for that of the trial judge in the absence of a clear abuse of discretion." Ibid. (citing Kurzke v. Nissan Motor Corp. in U.S.A., 164 N.J. 159, 165 (2000)).

Defendant contends that the trial court incorrectly and prematurely determined that plaintiff's mortgage is superior to defendant's mortgage through equitable subrogation. We disagree.

Generally, mortgage priorities are governed by our recording statutes, N.J.S.A. 46:26A-1 to -12. Gillis, 432 N.J. Super. at 43. "New Jersey is a 'race-notice' jurisdiction, meaning that when two parties are competing for priority over each other's mortgage, the party that recorded its mortgage first will normally prevail, so long as that party did not have actual knowledge of

the other party's previously-acquired interest." Ibid. (citing Cox v. RKA Corp., 164 N.J. 487, 496 (2000)). Accord N.J.S.A. 46:26A-12(b). As a corollary to that rule, "[l]enders and other parties are generally charged with constructive notice of instruments that are properly recorded." Gillis, 432 N.J. Super. at 43-44 (citing Cox, 164 N.J. at 496). "These general propositions, however, are subject to certain equitable considerations." Id. at 44.

Despite the general rule prioritizing first-recorded mortgages, an exception "can sometimes occur when a third party advances money to pay off a mortgage." Ibid. In certain instances, our courts have applied the doctrine of equitable subrogation to ameliorate the harsh consequences of the recording act, by "permit[ting] the third[-]party lender to inherit, in full or in part, the original lien position of the mortgage that it paid off, even if an intervening lien existed in the meantime." Ibid. (citing Inv'rs Sav. Bank v. Keybank Nat'l Ass'n, 424 N.J. Super. 439, 443 (App. Div. 2012)).

> Under the doctrine of equitable subrogation, "[a] refinancing lender whose security turns out to be defective is subrogated by equitable assignment 'to the position of the lender whose lien is discharged by the proceeds of the later loan, there being no prejudice to or justified reliance by a party in adverse interest.'"
>
> Ocwen, 450 N.J. Super. at 398 (quoting Equity Sav. and Loan Ass'n v. Chicago Title Ins. Co., 190 N.J. Super. 340, 342 (App. Div. 1983)).

11

"[T]he new mortgagee by virtue of its subrogated status can enjoy the priority afforded the old mortgagee." Inv'rs Sav. Bank, 424 N.J. Super. at 443-44 (quoting First Union Nat'l Bank v. Nelkin, 354 N.J. Super. 557, 565 (App. Div. 2002)). This result avoids the unjust enrichment of holders of intervening encumbrances "at the expense of the new mortgagee." Id. at 444 (quoting Trus Joist Corp. v. Nat'l Union Fire Ins. Co., 190 N.J. Super. 168, 179 (App. Div. 1983), rev'd on other grounds, 97 N.J. 22 (1984)). Accord Third Restatement § 7.6.

The doctrine, rooted in principles of equity, is used "to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it." Nelkin, 354 N.J. Super. at 565 (quoting Culver v. Ins. Co. of N. Am., 115 N.J. 451, 455-56 (1989)). "Equitable subrogation is a remedy 'highly favored in the law.'" Ocwen, 450 N.J. Super. at 398 (quoting First Fid. Bank, Nat. Ass'n, S. v. Travelers Mortg. Servs., Inc., 300 N.J. Super. 559, 564 (App. Div. 1997)).

"Subrogation rights are created in three different ways: (1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel the ultimate discharge of an obligation by the one who should in good conscience pay it." Nelkin, 354 N.J. Super. at 565 (citing Culver, 115 N.J. at 456). In Nelkin, we held that "[t]he new lender is not entitled to subrogation, absent an

agreement or formal assignment, if it possesses actual knowledge of the prior encumbrance." Id. at 566 (citing Metrobank for Sav., FSB v. Nat'l Cmty. Bank of N.J., 262 N.J. Super. 133, 143-44 (App. Div. 1993)). However, "[e]quitable subrogation may still be afforded even though lack of knowledge on the part of the new mortgagee occurs as a result of negligence." Ibid. (citing Kaplan, 164 N.J. Super. at 138). The rationale for the actual knowledge "exception appears to be grounded upon a premise that a new lender would not be 'unjustly' enriching an intervening lienor if it deliberately loaned new funds to the creditor well aware of the existence of that prior lien." Gillis, 432 N.J. Super. at 45.

More recently, however, we have rejected this historical approach, finding that "the lender's actual knowledge of an intervening lien is not a bar to its reliance upon equitable principles of priority." Gillis, 432 N.J. Super. at 49-50. In Gillis, we applied principles of replacement and modification recognized in the Third Restatement since the refinancing lender discharged its own prior mortgage and issued a new mortgage loan in a higher amount while simultaneously paying off the balance owed on a junior lienor's line of credit. Id. at 38-39. We concur with its extended analysis of equitable subrogation under the Third Restatement.

13

As we noted in Gillis, "the Third Restatement has repudiated the traditional majority approach and recommends that, subject to certain other factors, 'subrogation can be granted even if the payor had actual knowledge of the intervening interest.'" Id. at 46 (quoting Inv'rs Sav. Bank, 424 N.J. Super. at 446 (quoting Third Restatement § 7.6 cmt. e)). "By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation . . . on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition[.]" Third Restatement § 7.6(b)(3). "[T]he pivotal question is 'whether the payor reasonably expected to get security with a priority equal to the mortgage being paid.'" Gillis, 432 N.J. Super. at 46 (quoting Third Restatement § 7.6 cmt. e). "Ordinarily, lenders who provide refinancing desire and expect precisely that, even if they are aware of an intervening lien." Third Restatement § 7.6 cmt. e; see also Third Restatement § 7.6 cmt. e, illus. 26.

"Under the Third Restatement's alternative approach, the pertinent limiting factor is not the new lender's knowledge, but instead whether there has been 'material prejudice' to the intervening lienor." Gillis, 432 N.J. Super. at 45 (quoting Third Restatement § 7.6(b)(4)). If the new lender "'lends the mortgagor more money than is necessary to discharge the preexisting mortgage[,]' . . . the new lender should be 'subrogated only to the extent that

14

the funds disbursed are actually applied toward payment of the prior lien. There is no right of subrogation with respect to any excess funds.'" Id. at 47 (internal citations omitted) (quoting Third Restatement § 7.6 cmt. e).

We depart from the holding in Nelkin and adopt the Third Restatement's sound approach. Equitable subrogation is appropriate when loan proceeds from refinancing satisfies the first mortgage, the second mortgage is paid in full as part of the transaction, and the transaction is based on a discharge of the second mortgage, so long as the junior lienor, here defendant, is not materially prejudiced. See Gillis, 432 N.J. Super. at 50. Under such circumstances, equitable subrogation should not be precluded by the new lender's actual knowledge of the intervening mortgage. "To do otherwise would allow [defendant] to reap an undeserved windfall" by "allowing the junior lienor to vault over the priority of the refinancing mortgage lender." Id. at 39, 51.

Here, as a direct result of plaintiff refinancing the FIFC first mortgage, it was paid in full and discharged of record. The Fleet mortgage balance was paid off. At all relevant times, plaintiff, the Title Agency, and the title insurer, understood and required that the Fleet mortgage was to be discharged. The closing documents and endorsement reflect that understanding. The unexpected absence of a discharge of the Fleet mortgage was, at most,

15

negligence.  Defendant should not be unjustly enriched as a result of this type of mistake.

Moreover, by limiting the first lien priority of plaintiff's mortgage to the balance due on the FISC mortgage at closing, the superior lien balance owed by the Deelys was not increased.  In addition, as part of the transaction, the HECLA balance was satisfied.  Under these circumstances, defendant is not materially prejudiced by subrogating plaintiff's mortgage.

On the other hand, denying equitable subrogation would place defendant in first lien position, an inequitable result that is contrary to the parties' expectation.  Issuing a payoff quote and having the HECLA balance paid in full hardly bespeaks an expectation that its lien position would be materially improved by the refinancing.  Indeed, defendant does not claim that it expected to achieve a first lien position as a result of the refinancing.

Applying these principles, we conclude that the judge's factual findings are amply supported by the record and his legal conclusions are correct.  The judge did not abuse his discretion in applying the doctrine of equitable subrogation to accord plaintiff a first-priority position.

Lastly, defendant also appeals the final judgment of foreclosure.  It raises no legal issues regarding the foreclosure judgment aside from the application of equitable subrogation that we have already addressed.  It is

16

otherwise undisputed that plaintiff was entitled to a final judgment of foreclosure. Accordingly, we also affirm entry of the final judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1261-19